Chester MATUSIAK,
Petitioner-Appellant,

v.

Walter KELLY, Superintendent of Attica
Correctional Facility, Elizabeth Holtz-
man, District Attorney Kings County,
and Robert Abrams, Attorney General
of the State of New York, Respondents-
Appellees.

No. 597, Docket 85–2233.

United States Court of Appeals,
Second Circuit.

Argued Dec. 16, 1985.

Decided March 20, 1986.

Phylis Skloot Bamberger, Federal Defender Services Unit, The Legal Aid Soc., New York City, for petitioner-appellant.

Darrell Fields, Asst. Dist. Atty., Kings County, Brooklyn, N.Y. (Elizabeth Holtzman, Dist. Atty., Kings County, Barbara D. Underwood, Asst. Dist. Atty., Kings County, Brooklyn, N.Y., on brief), for respondents-appellees.

Before OAKES, KEARSE and PIERCE, Circuit Judges.

KEARSE, Circuit Judge:

Petitioner Chester Matusiak, a New York State prisoner who pleaded guilty to second-degree murder, in violation of N.Y.Penal Law § 125.25(1) (McKinney 1975), appeals from a judgment of the United States District Court for the Eastern District of New York, Charles P. Sifton, *Judge*, denying his petition, pursuant to 28 U.S.C. § 2254 (1982), for a writ of habeas corpus. Matusiak contends that the district court erred in rejecting his claim that his plea of guilty should be set aside on due process grounds because the state court (a) erroneously found him competent to stand trial and (b) accepted his plea of guilty although he was not capable of knowingly and voluntarily entering such a plea. Respondents (the "State") contend that dismissal of the petition is required because Matusiak has not exhausted his state court remedies with respect to the latter claim and that, in any event, the petition lacks merit. Finding that all of Matusiak's present claims were adequately presented to the state courts, and finding merit in the claim that his guilty plea was not entered knowingly and voluntarily, we reverse the judgment of the district court and remand for entry of an order conditionally granting the writ.

## I. BACKGROUND

In June 1979, Matusiak, then 20 years old, was arrested and charged with having acted in concert with Richard Dyser to cause the death of Edward Mascia. Shortly after his arrest, Matusiak, who had been institutionalized in at least five different psychiatric hospitals since the age of 11, was placed on a suicide watch. Upon his initial arraignment in Criminal Court, the court ordered a psychiatric examination pursuant to N.Y.Crim.Proc.Law art. 730 to determine whether he was fit to proceed to trial. A qualified psychiatrist and a certified psychologist examined Matusiak, and both found him fit to proceed. In the meantime, Matusiak was indicted on three counts of second-degree murder, one count of first-degree robbery, and one count of first-degree burglary. On July 13, 1979, upon his postindictment arraignment in New York Supreme Court, Matusiak entered a plea of not guilty to all of the offenses charged.

### A. *The 1979 Competency Proceedings in State Supreme Court*

In late October 1979, because of his delusional and other aberrant behavior, Matusiak was transferred from the prison where he was being detained to the Kings County Hospital Center ("Hospital Center") in Brooklyn. On November 1, 1979, at Matusiak's request, Supreme Court Justice John R. Starkey, ordered another psychiatric examination pursuant to art. 730. Two Hospital Center psychiatrists, including one of the examiners who had found him fit to proceed in July 1979, examined Matusiak and found him not fit to proceed. Another psychiatrist examined him and found him fit to proceed.

On November 21, 1979, a competency hearing was conducted before Justice Philip E. Lagana at the Hospital Center. At the hearing, Matusiak's attorney and both of the psychiatrists who had found Matus-

iak unfit to proceed testified to his incompetence to stand trial. The record included the reports of these two psychiatrists and the report of the psychiatrist who had found Matusiak fit to proceed in early November. Matusiak himself also testified. The court concluded that Matusiak was fit to proceed.

### B. *The 1980 Plea of Guilty*

On October 6, 1980, nearly one year after Matusiak had last been adjudged competent to proceed to trial, he pleaded guilty to one count of second-degree murder, in a proceeding before Justice William C. Thompson. In the course of the plea hearing, the court advised Matusiak that he had an absolute constitutional right to a jury trial and that he could bring in witnesses, including doctors, and could cross-examine the prosecution's witnesses. When asked if he understood that by pleading guilty he would give up his constitutional right to have a trial by jury, Matusiak responded, "Yes." Nonetheless, the colloquy that surrounded this response and led to the acceptance of the plea of guilty was tortuous.

Matusiak's attorney advised the court that Matusiak wished to withdraw his prior plea of not guilty and to enter a plea of guilty to second-degree murder notwithstanding the availability of a defense of insanity. Counsel stated that he had intended to present this defense through Matusiak's psychiatric record and the opinion of a court-appointed psychiatrist who had examined Matusiak and concluded that Matusiak had not known the nature and consequence of what he was doing or that what he was doing was wrong. When asked by the court if he wanted to plead guilty, Matusiak stated that he did but that 15 years was a long time. The court told Matusiak that he could go to trial and added that the court would do whatever he wanted. Matusiak replied that he was "positive" that he wanted to plead guilty. Immediately thereafter, however, when the court sought to be sure that Matusiak genuinely wished to waive his defense of insan-

ity, Matusiak responded that he wanted to go to trial:

THE COURT: Okay. You know there is a possible defense, I believe Mr. Moser spoke to you, that you might have if you went to trial. It's up to the jury as to whether they're going to believe or not a defense of insanity. Do you know that?

THE DEFENDANT: I'll take it to trial.

THE COURT: You'd rather take it to trial?

THE DEFENDANT: Yes.

THE COURT: Then you don't want to plead guilty then, right?

THE DEFENDANT: No.

(Transcript of hearing held October 6, 1980 ("Tr."), at 6.) But when the court then stated that Matusiak could have a trial, he promptly changed his mind again:

THE COURT: Okay. You'll go to trial, no problem. That's no problem.

(Whereupon, the defendant conferred with counsel.)

THE DEFENDANT: Your Honor, I don't want to go to trial. I want to plead guilty now.

THE COURT: You can't go both ways, Mr. Matusiak. You have to tell me now what you want me to do. What do you want me to do?

THE DEFENDANT: I'll cop out.

THE COURT: What?

THE DEFENDANT: Cop out.

THE COURT: You want to cop out? In other words, what you're going to do is plead guilty?

THE DEFENDANT: Yes.

THE COURT: Okay. And you realize once you plead guilty the insanity defense that you were going to use, you can't use anymore. You understand that?

THE DEFENDANT: (Nods head in the affirmative.)

THE COURT: What? Do you understand that?

THE DEFENDANT: Yes.

(Tr. 6–7).

When the court then sought to elicit from Matusiak a description of the events

leading to the murder charge, the following colloquy ensued:

THE COURT: Now, Mr. Matusiak, what you're pleading guilty to is that on or about—between June 12 and June 13, you and Mr. Dyser killed somebody by the name of Edward Mascia. Is that true? Is that true?

(Whereupon, the defendant conferred with counsel.)

THE DEFENDANT: He didn't kill him.

THE COURT: I wan't [sic] there. I don't know what happened. Tell me what happened. Tell me what happened in your own words.

(Whereupon, the defendant conferred with counsel.)

THE DEFENDANT: I don't want to talk about it.

THE COURT: Oh, you have to talk about it. Tell me what happened. I wasn't there. I don't know. You tell me what happened. What happened during that night?

(Whereupon, the defendant conferred with defendant [sic].)

THE DEFENDANT: Well, we was in the room—

THE COURT: Who was in the room?

THE DEFENDANT: Me and myself.

THE COURT: Yes.

THE DEFENDANT: I was in the room, and I heard the guy was making noises.

THE COURT: What guy was making noise?

THE DEFENDANT: The guy that was— the guy that was murdered.

THE COURT: How did you get in this room?

THE DEFENDANT: Through a window. The window was open.

THE COURT: Who opened the window?

THE DEFENDANT: It was opened already.

THE COURT: And what did you do, go in through the window?

THE DEFENDANT: Yes. Somebody robbed the place before we went in.

THE COURT: All right. Then when you went in, what did you do?

THE DEFENDANT: Nothing. I just went in a room, and the guy was making funny noise. And I said, "Let's go," and we left.

THE COURT: So, you didn't do anything, right?

(Whereupon, the defendant conferred with counsel.)

THE DEFENDANT: When I'm in the room, the guy was making noises, right, so when I seen the way he was making noise, I went to the kitchen and got some water, and tried to give him so [sic] water. But then it was too late. He started gargling. Then I went and got more water.

THE COURT: You were a good Samaritan? You were helping him? You wanted to give him water?

THE DEFENDANT: I gave him water because he couldn't hardly breathe.

THE COURT: How did he die?

THE DEFENDANT: I don't know.

THE COURT: You don't know?

(Whereupon, defendant conferred with counsel.)

THE DEFENDANT: They said by suffocation.

THE COURT: How do you know he suffocated?

THE DEFENDANT: Because when I went—when I was being questioned by officers—

THE COURT: Yes.

THE DEFENDANT: They said he had a pitcher on him with a pillow on his face.

THE COURT: I see. How did that pillow get there?

THE DEFENDANT: I don't know.

THE COURT: Did you have anything to do with putting that pillow over his face?

THE DEFENDANT: No.

THE COURT: You're sure now?

THE DEFENDANT: No.

THE COURT: You're absolutely positive you had nothing to do with the pillow going over his face? You're sure about that? How did that pillow get over his face, and how did he suffocate? You tell me.

(Whereupon, the defendant conferred with counsel.)

THE COURT: How did it get there?

THE DEFENDANT: I don't know who put it there.

THE COURT: You're sure you don't know?

THE DEFENDANT: Positive.

THE COURT: You're positive now?

THE DEFENDANT: (Nods head in the affirmative.)

THE COURT: I'm not going to keep asking you.

(Whereupon, the defendant conferred with counsel.)

THE DEFENDANT: I killed the guy.

THE COURT: I didn't hear you.

THE DEFENDANT: I murdered the guy.

THE COURT: How did you murder the guy?

THE DEFENDANT: When I put a pillow over his face.

THE COURT: Oh, you're the one that put the pillow over his face?

THE DEFENDANT: I tried to help him.

THE COURT: What?

THE DEFENDANT: I tried to help him later on.

THE COURT: What did you put the pillow over his face for?

THE DEFENDANT: I don't know.

THE COURT: What?

THE DEFENDANT: I don't know what I was doing.

THE COURT: You didn't know what you were doing?

THE DEFENDANT: I don't know.

THE COURT: If you're not sure, if you didn't know what you were doing, that sounds like a defense of insanity: "I didn't know what I was doing, and I did it." Now, which is it? Did you know what you were doing, or did you not know what you were doing?

THE DEFENDANT: I didn't know what I was doing.

THE COURT: If you did not know what you were doing, maybe a jury will believe what you will tell them. I don't believe you, and maybe a jury will be-

lieve you. Why don't you let the jury decide if you knew what you were doing. They'll make the decision for you better than I will.

(Whereupon the defendant conferred with counsel.)

THE COURT: I can't hear you. You're afraid of what?

THE DEFENDANT: That he will recognize me.

THE COURT: Oh, you put the pillow over his face because you were afraid he would recognize you; is that right?

(Whereupon, the defendant conferred with counsel.)

THE COURT: Is that what caused his death, that pillow over his face?

THE DEFENDANT: Yes.

THE COURT: You know, Mr. Matusiak, I've asked you a lot of questions, haven't I?

THE DEFENDANT: Yes.

THE COURT: Any questions you want to ask me?

THE DEFENDANT: How much time will I get for this? How much time?

THE COURT: How much time you're going to get?

THE DEFENDANT: Yes.

THE COURT: 15 years to life.

THE DEFENDANT: When will I be able to come out?

THE COURT: After 15 years.

THE DEFENDANT: After 15 years?

THE COURT: Yes. Why, you think that's unfair? What about the guy who's dead? How much time do you think he's got?

THE DEFENDANT: Never mind.

THE COURT: That's right, he doing a lot of time himself, isn't he? He's doing the rest of his natural life, because you killed him, didn't you? Didn't you?

THE DEFENDANT: Yes.

(Tr. 8–15.)

Finally, the court asked Matusiak who was with him when Mascia was killed, and Matusiak replied, "I was by myself." When the court insisted that Matusiak say

who was with him, Matusiak stated, after conferring with counsel, "Dyser was with me. . . . But he wasn't there at the time." When the court asked whether Dyser had helped Matusiak to hold the pillow over Mascia's face, Matusiak replied, "I don't know." Eventually, after further questioning, Matusiak stated that he had done it by himself. The court then stated that the plea was acceptable.

Matusiak was eventually sentenced (Thompson, *J.*) to serve the statutory minimum for second-degree murder, 15 years to life imprisonment. He appealed the judgment of conviction to the Appellate Division, arguing that he had been denied due process by the lower court's finding that he was fit to proceed and by its acceptance of his guilty plea when he was mentally incapable of waiving his right to trial. The Appellate Division affirmed without opinion, 98 A.D.2d 997, 470 N.Y.S.2d 264 (2d Dep't 1983); leave to appeal to the New York Court of Appeals was denied, 61 N.Y.2d 910, 474 N.Y.S.2d 1033, 462 N.E.2d 1211 (1984).

#### C. *The Decision Below*

Matusiak commenced the present action pro se, filing with the district court a petition for a writ of habeas corpus alleging that the state trial court had denied him due process by finding that he was competent to proceed to trial when in fact he was not, and by accepting his plea of guilty when in fact he was mentally incapable of knowingly and voluntarily entering such a plea. The district court rejected both contentions.

The court noted that under 28 U.S.C. § 2254(d)(8), the federal court in a habeas proceeding is generally required to presume the correctness of any finding of fact made by the state court unless, in light of the record as a whole, the federal court concludes that "such factual determination is not fairly supported by the record." The court found that the state court's November 1979 determination that Matusiak was competent to proceed was amply supported by the record. As to the contention that

the plea of guilty should not have been accepted, the court found that "[a]lthough petitioner's plea was certainly not a model of clarity or consistency, the record does indicate that it was made voluntarily and knowingly." Memorandum and Order dated June 25, 1985, at 9. The court noted certain of Matusiak's equivocations during the plea proceeding and stated that

> [p]etitioner's expression of confusion when called upon to plead should perhaps have prompted a greater inquiry by the judge as to the source of petitioner's indecision, but no such inquiry was required. *See United States ex rel. Bullock v. Warden*, 408 F.2d 1326 (2d Cir. 1969) [, *cert. denied*, 396 U.S. 1043, 90 S.Ct. 688, 24 L.Ed.2d 686 (1970)]. Petitioner's answers to the judge's questions, on balance, indicate that he wished to plead guilty and understood the consequences of so doing.

*Id.* at 10. Accordingly, the court denied the writ.

#### D. *Issues on Appeal*

On this appeal, Matusiak pursues his contentions that he was denied due process by the state court's finding that he was competent to proceed to trial and by its acceptance of his plea of guilty. The State, in addition to opposing the appeal on its merits, contends that Matusiak's claim relating to his plea of guilty was not fully exhausted in the state courts. For the reasons below, we reject the State's exhaustion argument. Since we find merit in Matusiak's contention that the acceptance of his plea of guilty constituted a denial of due process, we need not reach his contention that the state court's earlier finding that he was competent to proceed also denied him due process.

### II. DISCUSSION

#### A. *Exhaustion*

In support of his contention that the acceptance of his plea of guilty constituted a denial of due process, Matusiak has argued that "[a] higher standard of competence is required for entering a guilty plea than for

standing trial," and that the court must take care to determine that the defendant understands the consequences of his plea and the constitutional protection he is waiving. The State contends that because Matusiak never argued to the state courts that a higher standard of competence is required for acceptance of a guilty plea than for a determination of competence to stand trial, Matusiak has not exhausted his state court remedies. We disagree.

The requirement of 28 U.S.C. § 2254(b) that a habeas petitioner exhaust his state court remedies before seeking relief from the federal court requires that the petitioner first give the state courts "a fair opportunity to pass upon his federal claim." *Daye v. Attorney General of the State of New York*, 696 F.2d 186, 191 (2d Cir.1982) (en banc); *see Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). This requires that he first present to the state courts both the essential facts of his claim, *e.g., id.* at 276, 92 S.Ct. at 512, and the legal basis for the claim, *Daye v. Attorney General of the State of New York*, 696 F.2d at 191; *see Picard v. Connor*, 404 U.S. at 277–78, 92 S.Ct. at 513. The requirement that the legal basis have been presented to the state court is satisfied "if the legal basis of the claim made in state court was the 'substantial equivalent' of that of the habeas claim." *Daye v. Attorney General of the State of New York*, 696 F.2d at 192.

It is plain that the claim presented by Matusiak here is the equivalent of that presented in Matusiak's brief to the Appellate Division. The principal heading in that brief cited the Fourteenth Amendment to the Constitution and argued that Matusiak had been "DENIED HIS RIGHT TO DUE PROCESS ... WHEN THE TRIAL COURT EXTRACTED A GUILTY PLEA FROM APPELLANT, WHOSE PRIOR AND EXTENSIVE PSYCHIATRIC HISTORY, AS WELL AS HIS BEWILDERED AND ERRATIC BEHAVIOUR AT THE PLEA, SIGNALLED THAT APPELLANT WAS TOTALLY INCAPABLE OF WAIVING HIS RIGHT TO TRIAL...." The body of the brief on that point, citing, *inter alia, Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and *Suggs v. LaVallee*, 570 F.2d 1092 (2d Cir.), *cert. denied*, 439 U.S. 915, 99 S.Ct. 290, 58 L.Ed.2d 263 (1978), argued, *inter alia,* that a plea of guilty cannot be accepted consistently with due process unless the defendant knowingly waives his constitutional rights to trial by jury and to confrontation of his accusers, and his privilege against self-incrimination. Citing *Westbrook v. Arizona*, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966) (per curiam), the brief argued that the court that accepted Matusiak's plea had not taken the precautions warranted by the circumstances to assure that the plea was knowing and voluntary.

These are the same substantive arguments made here and in the district court. Matusiak thus presented to the Appellate Division all of the doctrinal elements of his present claim. Whether or not the authorities relied on effectively impose a higher standard of competency for a guilty plea than for standing trial is not material to the issue of exhaustion. Principles of exhaustion did not require Matusiak to set forth an explicit comparison of the doctrines underlying his two claims.

Finally, we note that to the extent that it might have been helpful for the court to have the comparative view presented, that view was discussed in at least two of the cases relied on in Matusiak's brief. Thus, in *Suggs v. LaVallee*, this Court noted that

> [i]t has been held that competency to plead guilty must be greater than competency to stand trial since the former requires an understanding of constitutional rights.... This conclusion was based on the holding in *Westbrook v. Arizona, [supra]*, which recognized a distinction between competence to stand trial and competence to waive the right to counsel, the former nor [*sic* ] necessarily guaranteeing the latter.

570 F.2d at 1118 n. 65 (citations omitted). Both *Suggs* and *Westbrook* were cited by Matusiak to the Appellate Division. We

conclude that Matusiak satisfied the exhaustion requirement.

## B. *The Merits*

Analysis of the merits of Matusiak's claim that he is entitled to habeas relief because he lacked the capacity to knowingly and voluntarily enter a plea of guilty requires both an evaluation of the record as to Matusiak's state of mind at the time the plea was entered and an assessment of what deference the federal court must give to the state court's implicit determination that it was proper to accept the plea. Our analysis persuades us that the writ should have been granted.

■ We begin by recognizing, as did the district court, that under 28 U.S.C. § 2254(d) a federal habeas court is required to give deference to findings of fact made by the state court after a full and fair hearing at which the material facts were adequately developed, unless the federal court concludes that the record as a whole does not fairly support the state court's factual determination. *Id.* §§ 2254(d)(3) and (8). This requirement applies, however, only to matters of "historical" fact and to factual inferences to be drawn from the historical facts; it does not apply to questions of law or to mixed questions of fact and law. *See, e.g., Marshall v. Lonberger,* 459 U.S. 422, 431–32, 103 S.Ct. 843, 849, 74 L.Ed.2d 646 (1983); *Sumner v. Mata,* 455 U.S. 591, 597, 102 S.Ct. 1303, 1306, 71 L.Ed.2d 480 (1982); *United States v. Curcio,* 694 F.2d 14, 21 (2d Cir.1982).

■ The question of whether or not a plea of guilty has been entered voluntarily within the meaning of the Constitution is a complex one that involves questions of law and questions of fact. When such a plea is entered, the defendant waives several federal constitutional rights, including the right to trial by jury, the right to confront his accusers, and the privilege against compulsory self-incrimination. *See Boykin v. Alabama,* 395 U.S. at 243, 89 S.Ct. at 1712. For the plea to be voluntary, "[i]t is axiomatic" that the defendant must at least be competent to proceed, *United States v.*

*Masthers,* 539 F.2d 721, 725 (D.C.Cir.1976). In addition, he must have an awareness of the true nature of the charge against him, *e.g., Henderson v. Morgan,* 426 U.S. 637, 645, 96 S.Ct. 2253, 2257, 49 L.Ed.2d 108 (1976); have a "rational as well as factual understanding of the proceedings against him," *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960); and have knowledge of the nature of the constitutional protections he will forgo by entering his plea, *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

These components of voluntariness have been held to constitute, or at least to depend on, questions of fact the state court determinations of which are subject to the requirements of § 2254(d). In *Marshall v. Lonberger,* 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 for example, the Court held that the defendant's knowledge of the charges previously brought against him was a question of fact and that the state court's determination of his knowledge was therefore entitled to deference under § 2254(d). In *Maggio v. Fulford,* 462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983) (per curiam), the Court held that the defendant's competence to stand trial was a question of fact, the state court's determination of which was entitled to such deference. In both of these cases, the state court had heard testimony going directly to the question at issue, *see Marshall v. Lonberger* (defendant's testimony as to his knowledge of prior charges); *Maggio v. Fulford* (psychiatrist's testimony as to defendant's competence), and the Supreme Court emphasized that the state courts' determinations as to the credibility of witnesses were entitled to special respect. *Id.* at 112–18, 103 S.Ct. at 2261–64; *Marshall v. Lonberger,* 459 U.S. at 432–35, 103 S.Ct. at 849–51.

■ Nonetheless, the ultimate "question of an effective waiver of a federal constitutional right in a proceeding is ... governed by federal standards," *Boykin v. Alabama,* 395 U.S. at 243, 89 S.Ct. at 1712, and "the governing standard as to whether a

plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law ... and not a question of fact subject to the requirements of 28 U.S.C. § 2254(d)." *Marshall v. Lonberger,* 459 U.S. at 431, 103 S.Ct. at 849 (citing *Henderson v. Morgan; Boykin v. Alabama* ); *cf. Miller v. Fenton,* —— U.S. ——, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985) (voluntariness of a confession is a legal question meriting independent consideration in a federal habeas proceeding). The standard set by *Boykin v. Alabama* with respect to the voluntariness of a plea of guilty for federal constitutional purposes requires not only that the plea court inquire into the defendant's understanding of the charges, the proceedings, and the rights to be foregone, but also that it do so showing "the utmost solicitude of which [the court is] capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." 395 U.S. at 243–44, 89 S.Ct. at 1712. The court should not accept such a plea "without an affirmative showing that it was intelligent and voluntary." *Id.* at 242, 89 S.Ct. at 1711.

■ The record in the present case persuades us that the state court's implicit factual determinations that Matusiak was competent to enter a guilty plea and that he knowingly and intelligently did so are not entitled to deference, and that Matusiak's waiver of his right to go to trial was not effective under federal constitutional standards. As noted above, the federal habeas court is not required to defer to a state court factual determination if "the material facts were not adequately developed at the State court hearing ...," 28 U.S.C. § 2254(d)(3), or if the record as a whole does not fairly support that determination, *id.* § 2254(d)(8). We find lacking here fair support in the record for the state court's implicit finding that Matusiak's election to forgo trial was intelligent, and we find that there was inadequate development of the material facts at the plea hearing as to Matusiak's competence to enter a plea.

As to the state of Matusiak's knowledge, there is little to suggest that Matusiak understood the nature of the trial to which he was entitled. In the plea hearing, the court informed Matusiak that it was up to the jury to decide whether to believe his defense of insanity; the court did not tell Matusiak that if the jury believed that defense Matusiak would be found not guilty of the crime with which he was charged. Shortly thereafter, when Matusiak told the court that he did not know what he was doing when he killed Mascia, the court stated that he could let the jury decide whether he knew what he was doing, and that "maybe a jury will believe what you will tell them. I don't believe you...." The fact that the court had a negative view of Matusiak's claim of innocence would not, of course, have been determinative if Matusiak went to trial. But this may well not have been apparent to Matusiak. Though the court's statement of its (irrelevant) view might well have been harmless if the defendant were one who understood the nature of a criminal trial, it is far from clear that Matusiak was such a person, and, indeed, the record suggests the contrary. Matusiak had testified at his November 1979 competency hearing that he had never been in a trial and did not "know about court things too much." At that time, Matusiak had described his understanding of the roles of the jury and the court: He did not know what the jury did, but he thought the judge "judges.... [t]he defendant.... [t]o see if [he is] guilty or not guilty."

Given this prior perception of the role of the judge, Matusiak may well have concluded at the plea hearing that it would be pointless to have a jury believe he was insane since this judge believed him guilty. The court did nothing at the plea hearing to dispel Matusiak's earlier articulated conception that the ultimate question of his guilt would be determined by the judge, and indeed it may have reinforced that misimpression in Matusiak's mind by stating its own disbelief in Matusiak's position. In these circumstances, we find it difficult to conclude that Matusiak's entry of his

plea was intelligent and knowing or that the court's implicit finding that Matusiak understood the nature of the right he would forgo is fairly supported by the record as a whole.

Moreover, the court did virtually nothing in the plea hearing to develop the material facts as to Matusiak's current competence to enter a plea, though the prior record was ample to suggest that capacity might be lacking. Matusiak had been institutionalized at least five times before his arrest. The court had twice thereafter ordered psychiatric examinations for him, a matter of months apart. The latter examination had resulted in two of the three psychiatrists who examined him concluding that he was not competent to proceed. Though the court's subsequent hearing had led it to the conclusion that Matusiak was in fact competent to proceed, that determination had been made nearly a year before the hearing that led to the entry of his plea. We think it hardly demonstrated the "utmost solicitude" for the plea court to have assumed, without any further inquiry, that the year-old determination of competence, especially for a defendant whose instability had necessitated successive psychiatric evaluations a few months apart, remained valid.

Certainly there was nothing in Matusiak's responses to the court's questioning at the hearing to reassure the court that Matusiak was then capable of exercising rational judgment. He began by telling the court that he was "positive" that he wanted to plead guilty. Then, in quick succession, he stated that he wanted to go to trial and did not want to plead guilty, and that he did not want to go to trial but did want to plead guilty. When asked to describe what had happened in the killing of Mascia, Matusiak gave responses that suggested an unstable mental state. For example, though he eventually gave affirmative answers to the court's probing as to whether he and he alone had smothered Mascia, *en route* Matusiak stated that he did not know how Mascia died; that he did not know who had put the pillow over Mascia's face; that he did not know why he had put the pillow over Mascia's face; that

Dyser both was and was not with him when he smothered Mascia; and that he did not know whether Dyser had helped him hold the pillow over Mascia's face. While mere recalcitrance would not suffice to call into question the rationality of a defendant who had no history of mental illness, where, as here, there is such extreme equivocation by a defendant who has an extensive history of psychiatric problems, the court could not, consistent with due process, accept the plea of guilty without a more searching inquiry or a more up-to-date psychiatric evaluation.

Given the totality of the state court record, we conclude that the material facts as to Matusiak's competence to proceed were not adequately developed at the plea hearing. The court neither sought out nor received the necessary affirmative showing that Matusiak was capable of knowingly and voluntarily entering a plea of guilty.

Nor are we required to accept the findings of the district court that Matusiak's plea was made voluntarily and knowingly since these findings were not made within the proper legal framework. The district court relied solely on our pre-*Boykin* decision in *United States ex rel. Bullock v. Warden*, 408 F.2d 1326, in concluding that the state court was not required to conduct a more extensive inquiry than it did, notwithstanding Matusiak's "expression of confusion when called upon to plead." The court did not mention *Boykin v. Alabama* or otherwise appear to give any recognition to *Boykin*'s requirement that the court that accepts a plea do its utmost to ensure that the defendant fully understand the import and consequences of his plea. To the extent that the district court may have meant to find that the state court did make the required inquiry, we conclude, on the basis of our review of the record as discussed above, that such a finding would have been clearly erroneous.

Accordingly, we reverse the judgment dismissing Matusiak's petition and remand for entry of an order conditionally granting the writ. The judgment should state that

the writ will be granted unless within 30 days the State holds a hearing to determine Matusiak's present mental competence to stand trial or to enter a plea of guilty. If it is determined as a result of that hearing that Matusiak is competent, the State is, of course, free to try him or to accept a proper plea. If it is determined that Matusiak is not competent, the State's mental health authorities may take whatever steps are appropriate under the pertinent provisions of state law.

## CONCLUSION

The judgment of the district court is reversed, and the matter is remanded for further proceedings not inconsistent with this opinion.