Kent OPPEL, Petitioner,

v.

Raymond LOPES, Commissioner of Corrections, and George Bronson, Warden, Respondents.

Civ. No. B–87–46 (TFGD).

United States District Court, D. Connecticut.

Dec. 31, 1987.

Andrew B. Bowman, Westport, Conn., for petitioner.

Michael E. O'Hare, Steven M. Sellers, Asst. State's Atty., Office of the Chief State's Atty., Wallingford, Conn., for respondents.

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

DALY, Chief Judge.

### BACKGROUND

Upon a plea of guilty before the Superior Court of the State of Connecticut entered

on March 8, 1983, the petitioner herein, KENT OPPEL, was convicted of violating CONN.GEN.STAT. § 53a–54a(a)[1] for the brutal murder of his wife, Robin Oppel. On April 22, 1983 petitioner was sentenced to a term of imprisonment of seventeen and one-half years to life, which he is serving presently at the Connecticut Correctional Institution at Somers. In the instant petition for a writ of habeas corpus, made pursuant to 28 U.S.C. § 2254, petitioner alleges that the plea, which was entered pursuant to the *Alford* doctrine[2], was not voluntarily, knowingly, or intelligently made, and, consequently, violated principles of due process. Petitioner prays that the Court vacate the guilty plea and resulting conviction, and remand the matter to Connecticut Superior Court for trial.

## FACTS

The prosecution's version of the offense as found by the state courts essentially is undisputed[3]:

At about 5 A.M. on September 19, 1980, the petitioner, who conducted a silk-screen business from his home in Monroe, was in his workshop when his wife came home. An argument arose between them concerning the manner in which the cars were parked in a parking area at the residence. The petitioner claims that, as a result of the dispute, his wife picked up a pipe and struck him. In response, the petitioner picked up a hammer and repeatedly struck his wife on the head with it. He then took a cord from his workbench and strangled her. Thereafter he sought the assistance of a worker on the premises to help him dispose of his wife's body. The two men dug a grave beneath a patio that was under construction and buried the wife's body. They then cleaned up the area and disposed of her car. Approximately a month later, the Monroe police, acting pursuant to a search warrant, excavated the patio and located the victim's body.

*Oppel v. Lopes,* 200 Conn. 553, 554–55, 512 A.2d 888 (1986).

At the plea proceeding, the trial judge inquired of the defendant whether he had discussed with his attorney "the crime of murder that has been charged in the indictment against you and your plea of guilty thereto." Tr. A. at 2[4]. After canvassing the defendant with regard to the rights he would be waiving by entering his plea of guilty, and after the defendant responded, apparently to the satisfaction of the court, the following colloquy took place:

---

1. Section 53a–54a of Connecticut General Statutes provides as follows:

   **53a–54a. Murder Defined. Affirmative Defenses. Evidence of mental condition. Classification.**

   (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to or a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

   (b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a), on the question of whether the defendant acted with intent to cause the death of another person.

   (c) Murder is punishable as a class A felony in accordance with subdivision (2) of section 53a–35a unless it is a capitol felony. (1973, P.A. 73–137, § 2; 1980, P.A. 80–442, § 15, eff. July 1, 1981; 1983, P.A. 83–486, § 4.)

2. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

3. The present record contains two opinions from the state courts where petitioner first sought the relief requested here: *Oppel v. Lopes,* Dkt. No. 3 17 08, slip op. (Conn.Super.Ct., Sept. 24, 1984), aff'd, *Oppel v. Lopes,* 200 Conn. 553, 512 A.2d 888 (1986).

4. "Tr. A." refers to the transcript of the plea proceeding before the Superior Court on March 8, 1983. "Tr. B." refers to the transcript of the sentencing proceeding which was conducted in the same court on April 22, 1983. Copies of both transcripts have been attached to the briefs submitted by both the petitioner and the respondent.

THE COURT: Do you understand the offense of murder with which you are being charged?

MR. OPPEL: Yes, your Honor.

THE COURT: I assume your attorney has explained the essential elements of this crime; is that correct?

MR. OPPEL: Yes, your Honor.

THE COURT: And he has explained to you, I would assume, your guilty plea under the Alford Doctrine; is that correct?

MR. OPPEL: Yes, your Honor.

THE COURT: Do you understand that doctrine?

MR OPPEL: I do.

THE COURT: The doctrine, meaning quickly in a thumbnail, that the evidence seems to be that if you went to trial you probably would be found guilty. Did he explain that to you?

MR. OPPEL: Thoroughly, your Honor.

THE COURT: You are aware of that?

MR. OPPEL: Yes, I am.

THE COURT: And you are pleading under this doctrine of the Alford Doctrine which is known under the law; is that correct?

MR. OPPEL: I am.

Tr. A. at 5. At the time, neither party objected to the taking of the plea, and, accordingly, the court made a finding that the plea was knowingly, voluntarily and intelligently made with a full understanding of the crime charged[5].

While describing to the court the circumstances of the offense, the prosecutor indicated that sometime after Oppel's arrest, there had developed "medical evidence concerning the state of mind of the defendant," and that there was a discrepancy in this evidence which prompted the prosecution to pursue plea negotiations. Tr. A. at 7. Upon hearing of this evidence, the court did not inquire further of the defendant with regard to his state of mind.

The evidence of Oppel's state of mind, of which defense counsel previously was aware, again was discussed during the sentencing proceeding on April 22, 1983. There the State's Attorney acknowledged that he viewed the offense as one stemming from a domestic dispute which had escalated, and ultimately had resulted in the death of the victim. Tr. B. at 6. The State's Attorney indicated further that he had viewed the State's case as a strong one until February, 1981, when he received a report from Dr. Miller, a psychologist to whom Oppel's case had been referred, which indicated that "the crime in which [sic] the defendant committed was quite foreign to what [Dr. Miller] would have expected of somebody with his apparent pattern had there been any premeditation." *Id.* The sentencing court also was advised that Dr. Miller "felt it was an unexplained assault on the wife and that he did act in panic and that there was panic involved," factors that led Dr. Miller to conclude that there was sufficient emotional distress experienced by the defendant at the time of the offense as to "diminish the degree of response which he was capable of exercising over his own behavior." *Id.* at 6–7.

Confronted with this report, the prosecution then had sought the opinion of Dr. Young, a psychiatrist from Yale–New Haven Hospital. After conducting what was reported to be a thorough examination of Mr. Oppel, Dr. Young opined that the initial striking of Mr. Oppel by his wife was not sufficient to "induce an extremely unusual or overwhelming state." *Id.* at 7. Not surprisingly, the State thought this report the more thorough of the two, yet gave to Dr. Miller the opportunity in a deposition to react to Dr. Young's report. Dr. Miller then indicated again that the initial blow delivered by Robin Oppel was sufficient to put the defendant into a state of panic; a state in which all relevant subsequent actions were committed. *Id.* at 7–8. The reports of both doctors were made fully available to the court.

After hearing both the prosecution's and defense counsel's remarks, the judge stated that he had become aware of the potentially mitigating factors during the pre-trial

---

5. During the plea canvass, Oppel also indicated that there had been no threats, promises, or coercion during the plea negotiations, in which the judge had taken part. Tr. A. at 4–5.

conferences in which he had taken part. On the basis of his knowledge, the judge indicated that "indeed legally the defense of extreme emotional disturbance would apply as a defense to this case if it were going to trial." *Id.* at 14. And that if the case were to go before a jury, there could well be a verdict on a lesser charge than that recommended to the trial court. *Id.* at 15. The judge indicated further that, "putting this case in its proper perspective it could have been a case of manslaughter 1." *Id.* The judge then went ahead and imposed a sentence of seventeen and one-half years to life [6].

In March, 1984, Oppel petitioned the Superior Court for the judicial district of Tolland for a writ of habeas corpus. He claimed there, as he does here, that the trial judge failed to explain at the time of the plea the elements of murder that the State would have to prove were the case to go to trial, and that the judge described incorrectly or inadequately the *Alford* doctrine, thus violating Oppel's due process rights under the fourteenth amendment. In denying the petition, the court concluded that, although the element of intent is a critical element of murder, it is not unfair to presume in this case that the charge was fully and adequately explained to petitioner by his attorney. Accordingly, relying on *Henderson v. Morgan,* 426 U.S. 637, 647, 96 S.Ct. 2253, 2258, 49 L.Ed.2d 108 (1976), the court found, because the record was devoid of any contrary evidence, it was appropriate to presume that Oppel had sufficient notice of what he was asked to admit. *Oppel v. Lopes,* Dkt. No. 3 17 08, slip op. at 7–8 (Conn.Super.Ct., Sept. 24, 1984). Similarly, the court presumed that counsel had explained to Oppel the meaning of the *Alford* doctrine.

Oppel appealed the decision of the Superior Court to the Connecticut Supreme Court, which found no error, and again denied his claim for relief. *Oppel,* 200 Conn. at 553, 512 A.2d 888. In reaching its conclusion, the Supreme Court found that the trial judge specifically had asked Oppel at the plea "whether his attorney had explained the essential elements of the crime with which he was charged and the petitioner responded in the affirmative." *Id.* at 557, 512 A.2d 888. *See* Tr. A. at 5. Further, the court found that although the record did not disclose affirmatively whether the indictment had ever been read to the petitioner in open court, *Oppel,* 200 Conn. at 558 n. 4, 512 A.2d 888, the trial court had asked Oppel if he had discussed with his attorney "the crime of murder that has been charged in the indictment against you," to which Oppel answered in the affirmative. Tr. A. at 5. The court concluded that the record supported the application of the *Morgan* presumption that defense counsel had explained the elements of the offense, because petitioner, at the time of the plea, had acknowledged that his attorney had done so, *Oppel,* 200 Conn. at 558, 512 A.2d 888; and although the element of intent is critical to the composition of the crime of murder (i.e., it distinguishes murder from manslaughter), it does not present any unique subtleties that would require any detailed explanation [7]. *Id.* at 559, 512 A.2d 888.

## DISCUSSION

Having exhausted his remedies in the state system, Oppel has petitioned this Court to vacate his conviction as violative of his right to due process under the fourteenth amendment to the United States Constitution. It is the dual thrust of his claim that the *Alford* plea was taken improperly, and that he lacked real notice of

---

6. The Court notes that upon a conviction for murder, Oppel was exposed to a maximum sentence of twenty-five years to life. *See* CONN. GEN.STAT. § 53a–35 (1985). Had he been convicted of manslaughter in the first degree, CONN.GEN.STAT. § 53a–55 (1985), his maximum exposure would have been an indeterminate sentence of not less than ten, nor more than twenty years. *See* § 53a–35.

7. Petitioner also claimed that an alleged violation of Connecticut Practice Book § 711(1) required that his plea be invalidated. Although that claim was rejected by the State courts, the same claim is not pursued here.

the critical elements of the offense to which he pleaded.

Oppel's plea to the murder of his wife cannot support a judgment of guilt unless it was voluntary and intelligent in a constitutional sense. *Smith v. O'Grady*, 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859 (1941); *Morgan*, 426 U.S. at 644–45, 96 S.Ct. at 2257. In this regard, a reviewing court must determine whether the defendant had at the time of the plea an adequate understanding of the federal constitutional rights that he was waiving, *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969), and real notice of the nature and elements of the charge to which he was pleading. *Morgan*, 426 U.S. at 644–45 & n. 13, 96 S.Ct. at 2257 & n. 13 (*citing Smith v. O'Grady*, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859 (1941); *Johnson v. Zerbst*, 304 U.S. 458, 464–65, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). Because a plea of guilty results in a conviction and its attendant penalties, the determination of voluntariness cannot properly be gleaned from a silent record, but rather, there must be an "affirmative showing" that the defendant intentionally relinquished or abandoned his constitutional rights and privileges and that he possessed an understanding of the law in relation to the facts. *Boykin*, 395 U.S. at 242, 243 & n. 5, 89 S.Ct. at 1711–12, 1712 & n. 5 (*citing Johnson v. Zerbst*, 304 U.S. at 466, 468, 58 S.Ct. at 1024, 1024). Thus, "[w]hat is at stake for an accused facing ... imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin*, 395 U.S. at 243–44, 89 S.Ct. at 1712.

The federal courts have jurisdiction to entertain habeas corpus petitions filed by state prisoners incarcerated in the district in which the petition is filed. 28 U.S.C. §§ 2241, 2254. Unless the federal habeas court concludes that the record as a whole does not fairly support the factual determinations of the state courts, it must accord a presumption of correctness to the written findings of fact made at the state trial and appellate court proceedings in which the petitioner was a party. 28 U.S.C. § 2254(d); *Sumner v. Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981); *Matusiak v. Kelly*, 786 F.2d 536, 543 (2d Cir.), *cert. dismissed*, ——— U.S. ———, 107 S.Ct. 248, 93 L.Ed.2d 172 (1986). This presumption, however, applies only to "basic, primary, or historical fact," *Townsend v. Sain*, 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 755 n. 6, 9 L.Ed.2d 770 (1963), and not to questions of law or mixed questions of fact and law. *Marshall v. Lonberger*, 459 U.S. 422, 431–32, 103 S.Ct. 843, 849, 74 L.Ed.2d 646 (1983); *Matusiak*, 786 F.2d at 543. If the state court reaches conclusions of law on the basis of historical facts, those conclusions, while entitled to "great weight," are open to collateral review in federal court. *Miller v. Fenton*, 474 U.S. 104, 115, 106 S.Ct. 445, 452, 88 L.Ed.2d 405 (1985); *Cuyler v. Sullivan*, 446 U.S. 335, 341–42, 100 S.Ct. 1708, 1714, 64 L.Ed.2d 333 (1980). Thus, when reviewing the findings made in the state courts, a federal habeas court must distinguish historical or subsidiary facts from ultimate legal conclusions. *Miller*, 474 U.S. at 114, 106 S.Ct. at 452.

■ It is the State's contention that section 2254(d) requires the Court to presume the correctness of the findings of the state courts that: (1) the petitioner's attorney advised him of the elements of murder; (2) the petitioner possessed an understanding of the law in relation to the facts; and (3) the petitioner's plea was voluntary and intelligent. The Court declines to accord the presumption of correctness to those holdings.

At first blush, it appears that the state courts' holdings that the petitioner's attorney advised him of the elements of murder is a finding of fact. *Oppel*, 200 Conn. at 558, 512 A.2d 888; *Oppel*, slip op. at 8. However, in each instance in which such a finding was made, the respective court relied upon *Morgan*, 426 U.S. at 647, 96 S.Ct. at 2258–59. In *Morgan* the petitioner had been indicted for first degree murder in New York, but, after plea-bargaining, pleaded guilty to second degree murder. The Supreme Court held Morgan's plea of guilty as involuntary because at the time of

the plea he had not received adequate notice that intent to cause death was an essential element of second-degree murder. *Id. Morgan* was a unique case because at a habeas corpus evidentiary hearing the district court had made a factual finding, supported by testimony, that the petitioner, who had an unusually low mental capacity, had at no time been advised of the elements of the offense. *Id.* at 647, 96 S.Ct. at 2259. The Supreme Court also suggested in *dictum* that

> [n]ormally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. Moreover, even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.

*Id.* Many courts, including ones in Connecticut, have since applied this suggestion as doctrine. *See, e.g., State v. Torres,* 182 Conn. 176, 184, 438 A.2d 46 (1980). The record reviewed by both the Connecticut habeas court and the Connecticut Supreme Court was devoid of any representation by defense counsel that he had explained the critical elements of murder to his client, or any indication that the trial judge had explained them at the time of the plea. Consequently, the only basis upon which to hold that Oppel had real notice of the elements of the crime of murder, was to apply the presumption of *Morgan,* and the state courts did so explicitly. *See Oppel,* slip op. at 8–9; *Oppel,* 200 Conn. at 558, 512 A.2d 888.

As a matter of federal constitutional law, the state court's "finding" in this regard is of significant import, and goes to the heart of the fundamental fairness of the acceptance of the plea. *Smith v. O'Grady,* 312 U.S. at 334, 61 S.Ct. at 574; *Morgan,* 426 U.S. at 645, 96 S.Ct. at 2257. The questions of "historical fact," what the state

courts' records show with regard to Oppel's plea proceeding, and any inferences that properly may be drawn regarding those historical facts, are questions governed by the § 2254(d) presumption. *Lonberger,* 459 U.S. at 431–32, 103 S.Ct. at 849. The presumption that a defendant has real notice of the critical elements of an offense is more than a mere inference, but necessarily is a presumption founded in law, not in fact[8]. The application of the *Morgan* presumption to those historical facts that are fairly supported by the record is a question of law not subject to the § 2254(d) presumption of correctness, but open to plenary review by the federal habeas court. *See Lonberger,* 459 U.S. at 436–37, 103 S.Ct. at 852; *Sullivan,* 446 U.S. at 342, 100 S.Ct. at 1715; *Stinson v. Wainwright,* 710 F.2d 743, 746–48 (11th Cir.), *cert. denied,* 464 U.S. 984, 104 S.Ct. 430, 78 L.Ed.2d 363 (1983). *But see Patterson v. Cuyler,* 729 F.2d 925, 930–32 (3rd Cir.1984) (state court's presumption of voluntariness of plea under *Morgan* presumed correct by federal habeas court under § 2254(d)).

Without doubt, "the governing standard as to whether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law ... and not a question of fact subject to the requirements of 28 U.S.C. § 2254(d)." *Matusiak v. Kelly,* 786 F.2d at 543–44 (*quoting Marshall v. Lonberger,* 459 U.S. at 431, 103 S.Ct. at 849); *cf. Miller,* 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (Voluntariness of a confession is a legal question that warrants independent consideration in federal habeas proceeding.). Because to enter a voluntary guilty plea the defendant must possess an understanding of the law in relation to the facts, *McCarthy v. United States,* 394 U.S. 459, 466–67, 89 S.Ct. 1166, 1170–71, 22 L.Ed.2d 418 (1969); *Boykin,* 395 U.S. at 243, 89 S.Ct. at 1712, the state trial judge who accepts the plea must determine "that the conduct which the defendant admits constitutes the offense charged." *McCarthy,* 394 U.S. at 467, 89

---

8. A presumption of law "is a procedural rule of law that dictates a factual conclusion in the absence of contrary evidence." *Legille v. Dann,* 544 F.2d 1, 5 n. 24 (D.C.Cir.1976) (*citing,* 9 J. Wigmore, Evidence § 2491 at 288–89 (3d ed. 1940)).

S.Ct. at 1171. The determination that Oppel possessed an understanding of the law in relation to the facts necessarily is one of law, and not one of fact subject to the § 2254(d) presumption. Similarly, although the "finding" of the state courts that Oppel's plea was voluntary and intelligent is a conclusion of federal law entitled to some weight, it is not a holding to which this Court is bound. *See Marshall,* 459 U.S. at 431, 103 S.Ct. at 849.

Even though a search of the record for direct evidence of Oppel's knowledge of the charge and understanding of the proceedings leads only to an abyss, the judgment of guilt on Oppel's plea may be preserved if this Court were to find the application of the *Morgan* presumption appropriate in the instant case, or that the "totality of the circumstances" properly leads to the conclusion that the "substance of the charge, rather than its technical legal elements was conveyed to the accused." *Morgan,* 426 U.S. at 644, 96 S.Ct. at 2257. After according the due weight to the conclusions of the state courts, this Court finds neither.

■ What is most troubling about the plea proceeding is the complete lack of "solicitude" exercised by the trial judge during the canvass of Oppel. The crucial inquiries by the judge, those regarding the elements of the offense and the meaning and consequences of the plea, simply begged the question. Oppel's responses, which lacked any detail or articulation of the facts in issue, were only as intelligent and meaningful as the questions themselves. Although a state trial court has no duty imposed by the federal constitution to engage in a ritualistic litany of questions when accepting a guilty plea, *Morgan,* 426 U.S. at 649–50, 96 S.Ct. at 2260, it is the recommended procedure—one that might prevent the type of deficiencies in the present record—that the critical elements of the offense be read and explained to the accused. *Harned v. Henderson,* 588 F.2d 12, 21 n. 10 (2d Cir.1978). This is a relatively simple task, especially with a crime comprised of such few elements as the Connecticut murder statute. *See id. (citing Morgan,* 426 U.S. at 649–50, 96 S.Ct. at

2260 (White, J., concurring)); CONN.GEN. STAT. § 53a–54a.

■ It is recognized, albeit under federal criminal procedure, that neither the determination of voluntariness, nor the record upon which the determination is made, is facilitated if the judge at the time of plea resorts to assumptions not founded in the record, rather than to the recorded responses to his articulate and penetrating inquiry. *McCarthy,* 394 U.S. at 467, 89 S.Ct. at 1171 (Fed.R.Crim.P. 11); *see United States v. Mancusi,* 275 F.Supp. 508, 519 (E.D.N.Y. 1967) (A searching and penetrating inquiry by the judge at the time of plea is the most reliable vehicle for the entry of a voluntary and intelligent plea.). This need for a penetrating and searching inquiry at the time of plea has not gone unrecognized by Connecticut courts, and should not have gone unrecognized here. *See, e.g., State v. Battle,* 170 Conn. 469, 475, 365 A.2d 1100 (1976) ("[T]he answers elicited from the defendant in open court should be something more than a mouthful of platitudes" if the plea is to represent a voluntary and intelligent choice and meaningful waiver of rights.); *cf. United States Ex Rel. Dunn v. Casscles,* 494 F.2d 397, 400 (2d Cir.1974) (the mere mouthing of the words "guilty" may not be relied upon to establish all the elements of the crime). The instant record simply does not indicate that the trial judge discharged his duty of investigating through the plea canvass whether the plea was voluntary and intelligent or that Oppel had real notice of the elements of the offense. *See Von Moltke v. Gillies,* 332 U.S. 708, 723–24, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948) (To determine properly whether a defendant has effectively waived his right to counsel, the judge must investigate "as long and as thoroughly as the circumstances of the case ... demand."). It reflects only brief responses to questions that lacked any substance, and they must be deemed meaningless, especially to a layman, who may be intelligent, but was not familiar with the criminal justice system. *See United States v. Lincecum,* 568 F.2d 1229, 1231 (5th Cir.1978). Upon review of the entire record, there is nothing to support an affirmative showing that the plea

was acceptable in a constitutional sense. See *Boykin*, 395 U.S. at 242–44, 89 S.Ct. at 1711–12.

Equally troubling is the presumption by the state courts that Oppel had been informed, or was aware of the critical elements of murder. There is no bright line test that has been employed by the courts that have applied the *Morgan* presumption to guilty pleas. *Compare Paulsen v. Manson*, 203 Conn. 484, 493, 525 A.2d 1315 (1987) *and State v. Childree*, 189 Conn. 114, 454 A.2d 1274 (1983) (presumption inapplicable) *with State v. Torres*, 182 Conn. at 184, 438 A.2d 46 (presumption applicable). The state court premised it's application of the *Morgan* presumption on the finding that murder is not such a complicated charge that would warrant a detailed explanation, and, further, at the time of the plea canvass, Oppel had acknowledged that his counsel had explained to him all of the elements of the offense. *Oppel*, 200 Conn. at 558–59, 512 A.2d 888. The Court finds this conclusion a faulty one that is supported neither in law nor by the record[9]. *See Paulsen*, 203 Conn. at 493, 525 A.2d 1315; *Childree*, 189 Conn. at 114, 454 A.2d 1274.

First, this was not a run of the mill case, but was a murder case in which the state of mind of the accused was a crucial and disputed issue. Though a jury may have found that Oppel had taken his wife's life, given the psychological evidence it would not have been difficult for a jury to conclude the element of intent was lacking. Although the judge acknowledged this, he failed to conduct a more searching and penetrating inquiry. The difference between murder and manslaughter is especially significant in this case and should have been explained to Oppel at the time of the plea. *Cf. Childree*, 189 Conn. 114, 454 A.2d 1274 (subtle differences between robbery and larceny required judge to make detailed inquiry). Second, it is of no consequence here that Oppel responded affirmatively to the trial judge's questions as to whether the elements of the offense had been explained. In fact, since its decision in *Oppel*, the Connecticut Supreme Court has held that the fact that a defendant merely has conferred with his counsel before a plea cannot be "deemed to be a sufficient indicator that his guilty plea has been entered voluntarily and intelligently." *Paulsen*, 203 Conn. at 493 & n. 3, 525 A.2d 1315 (*Morgan* presumption not warranted). Furthermore, as discussed above, because the canvass of Oppel begged the question, the responses were meaningless for purposes of determining on review whether the plea was intelligent and voluntary. The Court is of the view, and so holds, that other than the sheer speculation by the state courts, there is no basis in this record appropriate to presume that Oppel had knowledge of the true elements of the offense to which he pleaded.

Other factors buttress this conclusion. Although Oppel appeared to be intelligent and articulate, there is no indication that he had had any prior interaction with the courts or criminal justice system. *Cf. Ames v. New York State Div. of Parole*, 772 F.2d 13, 15–16 (2d Cir.1985) (prior contact with courts to be considered for pur-

9. The court notes that, unlike *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), Oppel opted at the federal habeas hearing not to introduce any evidence regarding his knowledge, if any, either of the charge or of the plea proceedings. This places the Court, as it did the state courts that reviewed Oppel's petition, in the posture of being unable to conclude with any degree of certainty what Oppel's actual knowledge was at the time of the plea. Thus, a conclusion that Oppel acquired the knowledge necessary to enter a voluntary and intelligent plea is left to speculation. *Cf. Paulsen v. Manson*, 203 Conn. 484, 493 n. 3, 525 A.2d 1315 (1987) ("[t]he mere fact that a defendant has conferred with his counsel could not ... be deemed to be a sufficient indicator that his guilty plea has been entered voluntarily and intelligently."); *Mitchell v. Scully*, 746 F.2d 951, 954 n. 2 (2d Cir.1984) (Friendly, J.) (in the absence of an evidentiary hearing, reviewing court bound to accept habeas petitioner's claim that counsel had not informed him of affirmative defense). In any case, both parties here suggested the matter be decided on the state habeas court record, and acknowledged that the burden of proof rested with the petitioner. *Cf. Harned v. Henderson*, 588 F.2d 12, 23 (2d Cir. 1978) (petitioner's burden of proof of preponderance of the evidence met where the record either supports him or fails to prove him wrong).

poses of *Morgan* presumption) (dictum), *cert. denied,* 475 U.S. 1066, 106 S.Ct. 1379, 89 L.Ed.2d 605 (1986). Nor does the record indicate that the indictment was ever read to Oppel in open court [10].

In the instant case, Oppel tendered his plea under the *Alford* doctrine. *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). By the terms of an *Alford* plea, judgment may be entered against a defendant who tenders a plea of guilty even when accompanied by a claim of innocence. The plea must represent a voluntary and intelligent choice among alternative courses of action open to the defendant, and the record before the judge must contain strong evidence of factual guilt. *Alford,* 400 U.S. at 31, 37, 91 S.Ct. at 164, 167. Normally, however, a state court is under no constitutionally imposed duty to engage in a factual basis inquiry for the plea "unless.... the state judge is put on notice that there may be some need for such an inquiry." *Banks v. McGougan,* 717 F.2d 186, 188 (5th Cir. 1983); *Willbright v. Smith,* 745 F.2d 779, 780 (2d Cir.1984); *see Paulsen v. Manson,* 203 Conn. 484, 490–91, 525 A.2d 1315 (1987). In the absence of a trial court's inquiry, it may be appropriate to determine that there is a factual basis for the plea, and that it is voluntary, by "considering all of the relevant circumstances." *Willbright,* 745 F.2d at 780. The conditions under which Oppel pleaded do not lend themselves to a finding that the *Alford* plea was tendered intelligently.

In the instant case the trial court was presented with a proffer from the prosecution that was not replete with evidence of the premeditation contemplated in the charge of murder, but rather, was laden with evidence of spontaneous violence prompted by a highly volatile emotional confrontation between spouses. If these circumstances did not put the trial judge on notice that a somewhat detailed inquiry of Oppel was necessary, surely the experts' reports and the trial judge's own acknowledgement that premeditation was perhaps lacking would create notice sufficient to warrant further inquiry. The Court acknowledges that the trial judge had been privy to plea discussions, but the record is silent as to precisely what was discussed.

Because it forces the accused to set aside the urge to vindicate himself and to reconcile himself to pleading guilty even though he may be innocent, the concept of the *Alford* doctrine is "counter-intuitive." *United States v. Punch,* 709 F.2d 889, 895 (5th Cir.1983). Thus, to ensure the plea represents an intelligent decision, it is essential that a court that accepts an *Alford* plea ensure that the defendant recognize its nature and consequences. *Id.* Neither the "thumbnail" description provided to Oppel, nor his own affirmation that he had received an explanation serves the desired end. *See* Tr. A. at 5. Absent a record of a penetrating and unassuming inquiry at the time of plea, it is not possible to ascertain or presume that Oppel understood the nature of the charges, or the plea and its consequences. The Court recognizes that the plea may have been tendered intelligently, and that Oppel may indeed be guilty of the offense to which he pleaded. But the present record is not sufficient to find that the plea satisfied due process requirements.

Accordingly, the petition for a writ of habeas corpus is hereby GRANTED, such that the plea upon which Oppel was convicted of the crime of murder is hereby VACATED. The petitioner shall be released from custody within sixty days hereof unless the trial of petitioner is by then calendered for prompt action, or the case is otherwise adjudicated.

It is SO ORDERED.

---

**10.** The Connecticut Supreme Court recognized that the record did not indicate that the indictment had been read, but found that fact mitigated by the fact that the trial judge asked Oppel "whether he had discussed the crime as charged in the indictment" to which Oppel responded in the affirmative. *Oppel,* 200 Conn at 558 n. 4, 512 A.2d 888. The reading of an indictment or charge may be an important factor in determining the voluntariness of a guilty plea. *See Morgan,* 426 U.S. at 650 n. 2, 96 S.Ct. at 2260 n. 2 (White, J. concurring). Unlike the Connecticut Supreme Court, however, the Court does not credit the canvass or Oppel's response thereto.

Dated at Bridgeport, Connecticut this 31st day of December, 1987.