Joseph L. SACCOMANNO, Petitioner-Appellee,

v.

Charles J. SCULLY, Respondent-Appellant.

No. 233, Docket 83–2348.

United States Court of Appeals, Second Circuit.

Argued Dec. 18, 1984.

Decided March 22, 1985.

Diane E. Selker, White Plains, N.Y. (Carl A. Vergari, Dist. Atty., Westchester County, Gerald D. Reilly, Asst. Dist. Atty., White Plains, N.Y., of counsel), for respondent-appellant.

Irving Anolik, New York City, for petitioner-appellee.

Before TIMBERS, VAN GRAAFEILAND and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

The State of New York appeals from an order of the United States District Court for the Southern District of New York (Thomas P. Griesa, *Judge*) which granted appellee's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1982). In granting appellee's petition, the district court found that his exclusion from his state trial for possession of stolen property was unjustified and consequently violative of the sixth amendment of the United States Constitution. We conclude that the district court failed to defer to the implied factual determination of the state appellate court that appellee's obstreperous behavior justified exclusion from the courtroom, and we therefore reverse.

In March of 1978, the State of New York indicted appellee for criminal possession of stolen property. He was tried by a jury in the Westchester County Court, before Judge Lawrence N. Martin. As a result of appellee's disruptive behavior, Judge Martin excluded him from the major portion of the trial. The jury convicted appellee on two counts of possession of stolen property, and the trial judge sentenced him to a term of imprisonment. On August 3, 1981, the Appellate Division, Second Department, of the New York State Supreme Court unanimously affirmed appellee's conviction, and the New York Court of Appeals denied leave to appeal on October 7, 1981. On October 20, 1981, appellee filed a habeas corpus petition in the United States District Court for the Southern District of New York, in which he claimed that his exclusion from trial violated his sixth amendment rights of confrontation and effective assistance of counsel. After reviewing the record of the state court trial proceedings, Judge Griesa granted appellee's petition on October 7, 1983.

The following events leading up to appellee's exclusion are reflected in the state court record. On August 1, 1979, the date scheduled for commencement of his trial,

appellee failed to appear in court. When brought to court by police, appellee complained to the judge that an injured leg was causing him great pain and that he was unable to proceed to trial. (Apparently, appellee had been shot in an incident unconnected to the crime with which he was charged). Appellee requested a month to recuperate. Upon questioning by Judge Martin, appellee admitted that his doctor had found him able to stand trial. Appellee also conceded that he had several times left his apartment and walked about his neighborhood. This colloquy continued with appellee claiming he was in pain and demanding medical treatment. Eventually, appellee revealed that he desired a continuance in order to attend a wedding. At this point, the judge revoked bail and ordered that trial proceedings begin the following day. Appellee responded: "You got no heart ...." followed by an obscenity directed at his lawyer.

The following day, at a hearing to determine which of appellee's prior convictions would be admitted into evidence, appellee, apparently clothed inappropriately (this is reflected in the judge's request that he obtain proper clothes for trial—apparently, he failed to do so), proceeded to walk about the courtroom. On the next day, jury selection began. As his attorney questioned prospective jurors, appellee shouted at his lawyer: "Would you tell them I got shot?" The judge admonished appellee and informed him that if there was another outburst, he would be removed from the courtroom. As the judge instructed the panel of venirepersons to disregard appellee's remarks, appellee again interjected insisting that his actions were proper because the district attorney had mentioned the injury. The judge again asked appellee to restrain himself and to let his attorney speak for him. The judge then turned again to the prospective jurors to instruct them, and appellee interrupted insisting: "I want to fire my attorney right now. I don't want him to defend me. Put it on the record. I don't want him to defend me." The judge responded that he would consider appellee's motion outside the panel's presence.

Appellee, however, failed to restrain himself and again interrupted stating: "I don't want him to defend me. I'll defend myself."

After the judge and parties had left the panel's presence and retired to the robing room, appellee continued to insist that his counsel be dismissed. Upon questioning, appellee revealed that he was dissatisfied with counsel's failure to discuss appellee's injury with the prospective jurors. The judge explained that such comment would have been improper and then asked appellee whether he would, from that point on, restrain himself and make no further outbursts. Appellee replied that he would act as his own counsel and that he was entitled to "make my own outburst." The judge informed appellee that he could not defend himself if he would not conduct himself properly, and then went on to inform appellee that refusal to give an assurance of proper conduct would result in his exclusion from trial. Appellee nevertheless refused to give any such assurance, and Judge Martin ordered him removed from the courtroom.

After jury selection had been completed and just before the opening statements had been made, appellee was brought into the courtroom where the trial judge again asked if he would assure the court that his conduct would be proper. Appellee again refused to give any such assurance and again was removed from the courtroom. After the first witness had testified, this sequence of events was repeated, and the trial proceeded without appellee present.

After the prosecution and defense cases had been presented but before summations began, appellee did agree to refrain from making any outbursts, and he then was allowed to remain in the courtroom, despite a later interruption during which he insisted that he be allowed "a shot" at the prosecutor.

Reviewing appellee's petition, the district court recognized that "a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will

be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Illinois v. Allen*, 397 U.S. 337, 343, 90 S.Ct. 1057, 1060, 25 L.Ed.2d 353 (1970). However, after reviewing the state trial record, the district court concluded that "[t]he behavior of petitioner in the present case was not so disorderly or disruptive as to make it exceedingly difficult or impossible to carry on the trial in his presence"—a conclusion with which we do not agree.

## DISCUSSION

■ On appeal the State argues that appellee's behavior justified his exclusion from the courtroom as the trial proceeded. In support of this argument, the state contends that there were numerous disruptive aspects of appellee's behavior, including his demeanor and non-verbal actions, which do not appear in the record but which clearly can be inferred and which support the trial court's action. Alternatively, the State argues that the trial judge's exclusion of appellee from the courtroom during the trial constituted an implicit factual finding that appellee "had waived his sixth amendment rights by behaving in so disruptive a manner that it was exceedingly difficult to carry on the trial in his presence." The State contends that the district court should have deferred to this finding unless it could conclude that the record did not fairly support the trial court's conclusion. *See* 28 U.S.C. § 2254(d) (1982) (requiring that federal courts considering state prisoners' habeas corpus petitions defer to factual findings of a state court made after a hearing and fairly supported by the record as a whole—unless any one of the several conditions not relevant here is found). In arguing this point, the State contends that § 2254(d) is applicable even though Judge Martin held no hearing since he had personally observed appellee's disruptive behavior. We need not address either of these arguments. We note that both the appellee and the State were before the state appellate court; appellee was given the opportunity to be heard; and his claim of deprivation of a constitutional right was given plenary consideration there. Consequently, § 2254(d) is applicable to the Appellate Division's holding that appellee's exclusion was justified. *Sumner v. Mata*, 449 U.S. 539, 546–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981).

■ In its order and opinion affirming appellee's conviction, the Appellate Division, after reviewing the record, concluded that "[t]here was ample justification for the exclusion of defendant from the courtroom." 83 A.D.2d 843, 843, 441 N.Y.S.2d 815, 816 (2d Dept.1981). This conclusion was necessarily based on a finding that appellee conducted himself "in a manner so disorderly, disruptive, and disrespectful of the court that his trial [could not] be carried on with him in the courtroom." *See Marshall v. Lonberger*, 459 U.S. 422, 433, 103 S.Ct. 843, 850, 74 L.Ed.2d 646 (1983) (where the standard of law to be applied is clear and application of that standard to the set of facts alleged by the habeas petitioner would result in the granting of relief, if the state court has ruled against petitioner, federal courts must assume that the state court applied the law properly and found facts contrary to those asserted by petitioner). Under the United States Supreme Court's decision in *Mata*, the findings of a state appellate court of competent jurisdiction made after review of the trial court record are entitled to deference under 28 U.S.C. § 2254(d). *Mata*, 449 U.S. at 546–47, 101 S.Ct. at 768–69. Here, the factual finding that underlies the Appellate Division's approval of appellee's exclusion from trial, made after argument and review of the trial court record, clearly falls within the rule of *Mata* and was entitled to deference by the federal district court. In its decision granting appellee's petition, the district court did not purport to find any of the conditions enumerated in § 2254(d) that would negate the presumption of correctness normally required to be afforded state court factual findings. Nor did the district court conclude that the finding at issue

here was not fairly supported by the record as a whole. In any event, such a conclusion would not be justified. Accordingly, we reverse the decision of the district court.

*Reversed.*