PETER VENTURA *v.* RAYMOND M. LOPES,
COMMISSIONER OF CORRECTION
(5032)

BORDEN, SPALLONE and BIELUCH, Js.

Argued February 3—decision released April 21, 1987

*Denise Dishongh,* deputy assistant public defender, for the appellant (petitioner).

*Maureen E. Norris,* special assistant state's attorney, with whom, on the brief, was *John A. Connelly,* state's attorney, for the appellee (respondent).

BORDEN, J. The petitioner appeals from the judgment of the trial court denying his petition for a writ of habeas corpus. He claims that, under the unique circumstances of this case, the court erred in rejecting his claim that his guilty pleas were the result of ineffective assistance of counsel and were, therefore, not made knowingly, intelligently and voluntarily. We find no error.

On October 17, 1983, the petitioner pleaded guilty under the *Alford* doctrine[1] to two separate substitute informations, each charging him with one count of sexual assault in the first degree. The court, *DeMayo, J.,* imposed consecutive sentences of fifteen years on each information, for a total effective sentence of thirty years. On appeal to this court, we rejected the petitioner's claims of certain procedural improprieties in the sentences. See *State* v. *Ventura,* 8 Conn. App. 148, 510 A.2d 1379 (1986). In that case we noted that this separate appeal was pending. Id., 150 n.3.

The petitioner's habeas corpus petition alleged that he was represented in the criminal cases by attorneys Paul J. Yamin and Martin J. Minnella. He alleged that before he entered his guilty pleas he was told the following by his counsel: If he pleaded guilty he would receive concurrent sentences and would serve five years; he would be sent to Whiting Forensic Institute (Whiting) for evaluation and, if found suitable, he would serve his sentence there rather than in prison. He further alleged that he entered his guilty pleas in reliance on these statements, that they were misrepresentations, and that they constituted ineffective assistance of counsel rendering his pleas involuntary.

On June 28, 1985, the court, *Kline, J.,* held an evidentiary hearing on the habeas petition. The petitioner

---

[1] See *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

introduced a letter to him from Yamin, dated September 19, 1983, approximately three weeks prior to the entry of his pleas on October 7, 1983. The letter, which was on the letterhead of Yamin and Minnella, Attorneys at Law, stated in part: "Dear Peter: The alternative which you have at your disposal is as follows: to plead guilty to one count on each file. The sentence will run concurrently which would mean that you would serve a minimum of five years.

"Simultaneously, the pleading to these charges you will be sent to the Forencis [sic] Institute in Hartford for 60 days. During the 60 days you will be evaluated by psychiatrists to determine if it is to your best interest to remain there for psychiatric treatment.

"In the event that you do not qualify, then upon termination of the 60 days, you will complete your sentence at Somers or at some other facility at the discretion of the Commissioner of correction."

In the letter, Yamin stated that if the petitioner did not "accept this program," he faced a trial on eight counts, which could result in a minimum sentence of forty years, and that he was likely to be convicted. The letter also strongly recommended that he accept this disposition of his cases. The letter concluded: "These are the only alternatives available to you. Please be prepared to make a decision at your Court appearance on September 22, 1983."[2] The petitioner testified that, on

---

[2] The entire letter is as follows:

"September 19, 1983

Mr. Peter Ventura
Cell Block C
Connecticut Correctional Institute
300 Whalley Avenue
New Haven, Connecticut

Dear Peter:
The alternative which you have at your disposal is as follows: to plead guilty

the basis of this letter, he understood if he pleaded guilty to one count of each of the two informations pending against him he would receive concurrent sentences, a minimum sentence of five years, and a psychiatric evaluation at Whiting. He further testified that this understanding was the sole basis for his pleas. He claimed that Minnella, who handled the plea and sentencing proceedings, had told him that although the state was going to recommend a sentence of thirty years subject to his right to argue for less, the deal was secretly set for concurrent sentences of five years. He claims that Minnella directed him not to say anything at the sentencing proceeding to prevent spoiling the deal. He further testified that Yamin had given him no assurances with respect to his sentence other than those contained in the letter.

The transcript of the plea proceedings of October 7, 1983, introduced in the habeas corpus hearing, discloses

---

to one count on each file. The sentence will run concurrently which would mean that you would serve a minimum of five years.

Simultaneously, the pleading to these charges you will be sent to the Forencis [sic] Institute in Hartford for 60 days. During the 60 days you will be evaluated by psychiatrists to determine if it is to your best interest to remain there for psychiatric treatment.

In the event that you do not qualify, then upon termination of the 60 days, you will complete your sentence at Somers or at some other facility at the discretion of the Commissioner of correction.

If you do not accept this program, then you must face trial on two files consisting of eight counts which could result in a minimum of 40 years of incarceration. The likelihood of a conviction is substantial considering the information that we have and also from our discussions with your wife.

Therefore, we strongly recommend that you accept the pleading to one charge in each count and accept the program that the Forencis [sic] Institution with the hope that you would serve your sentence there with psychiatric help.

These are the only alternatives available to you. Please be prepared to make a decision at your Court appearance on September 22, 1983.

Very truly yours,
Paul J. Yamin"

that the state filed two substituted informations, reducing a total of twenty-one counts to two counts. The petitioner was represented in these proceedings by Minnella. He vacated his prior not guilty pleas and entered two guilty pleas under the *Alford* doctrine. The state and Minnella represented to the court that the state would recommend a maximum sentence of fifteen years on each count, to run consecutively to each other, with the right of the petitioner to argue for a lesser sentence. The court, *DeMayo, J.,* conducted a meticulous canvass. In the course of the canvass, the petitioner acknowledged that his pleas were voluntary, that he was satisfied with the representation of Minnella and Yamin, that he understood that the maximum sentence on each count was twenty years which could be imposed consecutively, and that he understood the state's recommendation to be for a total of thirty years subject to his right to argue for less. He also stated that the state's recommendation was the sole condition of the plea discussions, and that, other than the ceiling of thirty years placed on the sentence, no other promises were made to him to cause him to plead guilty.[3]

Although the petitioner had not completed his case, the respondent warden of Somers Correctional Insti-

[3] The transcript of the sentencing proceeding, held on November 10, 1983, discloses that Minnella represented the petitioner. The state made its recommendation of two consecutive fifteen year sentences. Minnella argued on behalf of the petitioner, and asked the court to impose a sentence of twenty years. He also moved that the petitioner be sent to Whiting for evaluation pursuant to General Statutes § 17-244. The court asked the petitioner if he wished to say anything, and the petitioner said "No." The court imposed consecutive sentence of fifteen years, for a total effective sentence of thirty years in the custody of the commissioner of correction. It did not grant the petitioner's motion for a presentence evaluation pursuant to General Statutes § 17-244, but it appended a recommendation to its mittimus that he be evaluated at Whiting. It is undisputed that no such evaluation has taken place, and that the petitioner is incarcerated at the Somers Correctional Institution.

tution was permitted to call the next witness out of order at the habeas corpus hearing on June 28, 1985. The respondent called Yamin who testified that, in their firm, he handled civil cases primarily and Minnella handled criminal cases. In their representation of the petitioner, he acted as liaison with the petitioner's family, although he also examined the state's files and interviewed various people in preparation for trial. He attempted to explain the letter to the petitioner as something other than a representation of a plea bargain. He also testified that he never spoke with the petitioner.

The final witness at the hearing was the petitioner's mother. She testified that Yamin had led her to believe that the petitioner was going to receive concurrent sentences of five years and an evaluation at Whiting, and that she encouraged the petitioner to accept such a sentence. She further testified that, on the day before he pleaded guilty, the petitioner told her that Yamin and Minnella had asked him if he would plead guilty in exchange for a sentence of ten years. She also testified to a meeting which took place that night at which Yamin and Minnella for the first time told the Ventura family that at the sentencing to take place the following day the petitioner might get as much as thirty years.[4]

At the close of court on June 28, 1985, the hearing was continued "to a day uncertain" because of Judge Kline's schedule. At that point, the respondent had not presented his entire case in response to the petitioner's habeas corpus petition.

Nonetheless, on August 8, 1985, the court filed a memorandum of decision granting the petition for a

---

[4] She also testified to conduct by Yamin and Minnella at that meeting which, if credited, would constitute serious professional misconduct. Because the trial court made no findings with respect to this conduct, and because the court's memorandum of decision indicates that this alleged conduct was reviewed in other proceedings, we do not refer to it further.

writ of habeas corpus, and remanding the case for trial on the original twenty-one counts. The court found, inter alia, that, on the basis of his testimony and that of his family, the petitioner could have been led to believe that his right to argue for less than the two concurrent fifteen year sentences recommended by the state was actually going to result in a substantially lesser sentence. The court also specifically rejected Yamin's interpretation of the letter, and specifically gave "the letter the ordinary meaning expressed therein." It also found that the petitioner's family believed that he was going to get "a much lesser sentence than he received," and that they urged him to "go along with his lawyer" because of that belief. The court found in effect that the petitioner's guilty pleas were "based upon unfulfillable promises, delivered to him by his attorneys," and concluded that his pleas were not voluntary, intelligent or knowing.

The state promptly moved to vacate the judgment and to continue the hearing because the judgment had been rendered upon less than a full hearing. The court, realizing its error, granted the motion and reconvened the hearing on September 20, 1985.

The first witness at the reconvened hearing was Minnella. He testified that he, not Yamin, handled their criminal cases, including that of the petitioner. He testified that although he was fully prepared to go to trial on the twenty-one counts facing the petitioner, after examining the state's two files, including the petitioner's confession, it was his opinion that the petitioner had no valid defense. He further testified that, on the day set for jury selection, the state offered to reduce the charges to two counts, with a sentencing recommendation of not more than thirty years and the right of the petitioner to argue for less. Minnella went to the

petitioner's cell, discussed the offer with him and advised him to accept it. The petitioner decided to accept it.

Minnella further testified that he had never seen Yamin's letter to the petitioner, and that he considered it confusing. He offered a possible interpretation, namely, that it represented the best plea bargain obtainable, but *not* one already obtained. He did concede, however, that a reasonable person could understand it to propose that the sentences on the two counts would run concurrently. Minnella denied telling the petitioner that there was any secret deal for a lesser sentence, and he denied telling the petitioner not to disclose any such deal. The petitioner's father and brother also testified at the reconvened hearing.

Thereafter, the court issued a second memorandum of decision which denied the petition. After making several critical findings, discussed infra, the court concluded: "The habeas corpus proceeding is, as has been stated numerous times before, civil in nature. This means the petitioner has the burden of proving his matter by the fair preponderance of the evidence. Having heard the full story, the court is not convinced the petitioner has sustained his burden, though there are some serious allegations brought into focus in this matter. These allegations have already been brought to the attention of the proper forum. Accordingly, the petition is hereby denied." This appeal followed.

It is the petitioner's reading of this second memorandum of decision which forms the core of his appeal. The petitioner claims that the court's first memorandum of decision was legally and factually correct, that no evidence produced at the reconvened hearing justifies the factual findings and legal conclusions contained in the second memorandum of decision which are inconsistent with those in the first memorandum of decision,

and that the lack of evidentiary support for and the misapplication of the law in the second memorandum of decision require its reversal. We disagree. Having carefully examined the entire transcript and all the exhibits, and having read the second memorandum of decision in light of that evidence, we conclude that its critical factual finding, namely, that the petitioner did not sustain his burden of proof, is amply supported by the evidence and is fatal to the petitioner's claim.

In this case, there is no dispute about the applicable law. In order to prevail, the petitioner was required to prove that his counsel made a misrepresentation to him which constituted ineffective assistance of counsel, and that the misrepresentation was a significant factor in triggering his guilty pleas. *Myers* v. *Manson,* 192 Conn. 383, 396, 472 A.2d 759 (1984). Nor is there any dispute that, if he established that Yamin's letter was a significant factor in inducing him to plead guilty, he would have established a misrepresentation constituting ineffective assistance of counsel triggering his guilty pleas. What is in dispute in this case is whether the court, by the second memorandum of decision, validly found that the petitioner did *not* establish that Yamin's letter was a substantial factor in inducing his guilty pleas.

We turn first to the petitioner's argument that the court's first memorandum of decision accurately demonstrates that his pleas were constitutionally defective because they were based on Yamin's letter. To be sure, had the habeas corpus hearing been complete on June 28, 1985, the trial court's first memorandum of decision would be unassailable based on the petitioner's testimony and the letter.

The petitioner's argument is critically flawed, however, because the first memorandum of decision was based on incomplete evidence, and the trial court was

required, consequently, to vacate its initial judgment. A judgment which is later vacated stands as if it had never been rendered. *Coxe* v. *Coxe,* 2 Conn. App. 543, 547, 481 A.2d 86 (1984). Similarly, facts which are found based on an incomplete hearing which is later reconvened for further evidence rest on no firmer a foundation.

We turn therefore to the court's second, and properly issued, memorandum of decision. Although the memorandum of decision could have been clearer, it does contain several significant factual findings.

First, the court found that Minnella's testimony, taken at this continued hearing, "shed an entirely new light on the subject." This finding rests on Minnella's testimony. The gist of Minnella's testimony was as follows: The petitioner's pleas were entered immediately following, and in response to, the state's offer of a recommendation of no more than thirty years, subject to his right to argue for less; the letter played no part in the plea discussions; there was no secret deal behind the plea proceedings; and Minnella did not advise the petitioner to hide such a deal by remaining silent about it at the proceedings.

Second, the court found that Judge DeMayo's canvass was thorough, and that the petitioner acknowledged openly to Judge DeMayo not only that he understood the state's recommendation but also that the recommendation was the sole condition for his pleas. The court further found that the canvass "belies the petitioner's position today." The transcript fully supports these findings of the trial court.

Third, the court specifically concluded as follows: "Having heard the full story, the court is not convinced the petitioner has sustained his burden [of proving his case by a preponderance of the evidence]." This can only be read as a factual conclusion by the court that

it was not persuaded that the petitioner's pleas were induced by Yamin's letter, and that it was not persuaded that the plea proceedings were a sham created by defense counsel. This conclusion is amply supported by Minnella's testimony and by the transcript of the plea proceedings.

The petitioner's argument on appeal is based essentially on a particular reading of the court's second memorandum of decision, laying great emphasis on certain statements of the court regarding Minnella's interpretation of Yamin's letter, and regarding the testimony of the petitioner's father and brother. It is not necessary to detail the petitioner's particular analysis and dissection of the memorandum of decision. Suffice it to say that, although parts of the memorandum of decision are confusing, we simply do not read it as does the petitioner; we do read it to reject the essential factual underpinnings of the petitioner's case.

There is no error.

In this opinion the other judges concurred.