**Peter Paul VENTURA, Jr.,**
**Petitioner–Appellee,**

v.

**Larry MEACHUM, Commissioner, Connecticut Department of Correction,**
**Respondent–Appellant.**

**No. 279 Docket 91–2284.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 30, 1991.

Decided Feb. 26, 1992.

Judith Rossi, Asst. State's Atty., Office of Chief State's Atty., Wallingford, Conn., for respondent-appellant.

Andrew B. Bowman, Westport, Conn., for petitioner-appellee.

Before CARDAMONE, WALKER, and McLAUGHLIN, Circuit Judges.

WALKER, Circuit Judge:

Respondent Larry Meachum, Commissioner, Connecticut Department of Correction, appeals from a ruling of the United States District Court for the District of Connecticut (T.F. Gilroy Daly, *Judge*) granting petitioner Peter Paul Ventura's

petition for a writ of habeas corpus. The issue on appeal is whether the district court erred in failing to defer to certain state court findings of fact. 28 U.S.C. § 2254(d). We hold that the district court did so err and, accordingly, reverse the district court's ruling and remand with instruction to dismiss the habeas petition.

## BACKGROUND

On November 10, 1983, Judge Anthony V. DeMayo of the State of Connecticut Superior Court for the Judicial District of Waterbury, following petitioner Peter Paul Ventura's guilty plea to two counts of sexual assault in the first degree, sentenced him to two fifteen-year sentences to run consecutively, a total of thirty years imprisonment. The State had originally charged petitioner with twenty-one counts of sexual assault in the first degree. Conn.Gen.Stat. Ann. § 53a–70(a) (West 1985 & Supp.1991). Six of these counts related to allegations that petitioner threatened his child's sixteen-year-old babysitter with a razor, punched her in the jaw and sexually assaulted her. The additional fifteen counts related to charges that petitioner sexually assaulted a fourteen-year-old girl while free on bond on the first set of charges. These counts alleged that, after driving the girl around in his car, petitioner took her to a wooded area where he threatened her with a razor and sexually assaulted her.[1] On October 7, 1983, the day before petitioner's trial was to begin, the State offered to accept Ventura's guilty plea to only two of the original twenty-one counts of sexual assault in the first degree; to ask for a fifteen-year sentence on each count, the sentences to run consecutively, with an agreed cap of thirty years; and to agree that Ventura's attorney retained the right to argue for less.

Later that same day, Judge DeMayo conducted a thorough plea allocution, which included the following colloquy with Ventura:

THE COURT: Now [Assistant State's Attorney] Markle has put on the record the state's recommendation. I want to be sure that you understand that because what it adds up to, really, is that the State is going to make a recommendation of fifteen years on each count consecutive, so that the total sentence the State will be asking for is thirty years, your counsel reserves a right to argue for less, you understand that?

THE ACCUSED: Yes, your Honor.

THE COURT: And, that is the sole—that is the sole condition of the plea discussions then, you understand that?

THE ACCUSED: Yes.

THE COURT: All right. Now, other than this agreement as to the upper limit of the sentencing, have any other promises been made to cause you to enter these guilty pleas?

THE ACCUSED: No.

THE COURT: You understand that the only thing that the court is planning and I will indicate to you that I am agreeing to this, is that the only agreement that the court has with you is that it will not impose a sentence in excess of the State's recommendation, you understand that?

THE ACCUSED: Yes, sir.

After the plea allocution, no part of which is challenged on appeal, Judge DeMayo, satisfied that Ventura had voluntarily and intelligently consented to the above-stated plea agreement, accepted Ventura's plea of guilty and fixed a date for sentencing. Between the dates of the plea and the sentence Ventura raised no challenge to the plea agreement and did not seek to withdraw his guilty plea. At the November 10, 1983 sentencing hearing petitioner's counsel, Martin J. Minnella, argued for a twenty-year sentence, ten years below the State's recommendation of thirty years. Judge DeMayo, however, consistent with the agreement as allocuted, sentenced petitioner to fifteen years imprisonment on each count, the terms to run consecutively.

---

1. On September 3, 1991 petitioner was arrested on fresh charges of first degree aggravated sexual assault and first degree kidnapping that alleg-

edly took place after he was freed on bond pending retrial following the district court's granting of his habeas petition.

He also denied defendant's so-called "Whiting motion," which sought a continuance to allow the defendant to undergo a psychiatric evaluation at the Whiting Forensic Institute. However, Judge DeMayo recommended as part of the sentence that Ventura undergo a psychiatric evaluation at Whiting.[2] At the sentencing proceeding, after the court imposed the sentence, petitioner did not object to the sentence as inconsistent with his understanding of the plea agreement, nor did he seek to withdraw his guilty plea.

Petitioner's first sign of resistance appeared three months later when, on February 20, 1984, he filed a Motion to Correct the Sentence with the Superior Court for the Judicial District of Waterbury. The following day, February 21, 1984, he filed a *pro se* petition for a writ of habeas corpus in the Superior Court for the Judicial District of Tolland.

The Motion to Correct the Sentence, argued before Judge DeMayo on March 16, 1984, alleged a number of inconsistencies between the sentencing and the plea agreement. It asserted that the defendant's counsel did not argue for a lower sentence as contemplated by the agreement, and that the sentencing arrangement had been changed between the plea and the sentencing, claims which Judge DeMayo rejected based on a review of the plea transcript. The motion also alleged that there had been ineffective assistance of counsel, and included as an exhibit a September 19, 1983 letter from Paul J. Yamin (the "Yamin letter") of the firm of Yamin & Minnella, Ventura's attorneys in the plea and sentencing proceedings. In the letter, which because of its importance to this appeal we set out in full in the margin,[3] Yamin represented to petitioner that he had an option of pleading guilty to only two of the twenty-one counts, that the sentences on the two counts would "run concurrently which would mean that you would serve a minimum of five years," and that Ventura would be sent to "the Forencis [sic] Institute" (the Whiting facility) for a 60–day evaluation with the possibility that he would serve at least some of his term there. Ventura's motion alleged that this letter had misled him as to the terms of the plea agreement. Judge DeMayo, finding the letter to be irrelevant to the Motion to Correct the Sentence, denied the motion and suggested that the claim of ineffective assistance of counsel "should be handled by the habeas corpus [sic] which [Ventura] has filed."

Ventura's habeas corpus petition before Judge Kline of the Superior Court for the Judicial District of Tolland focused specifically on the claim that, due to the Yamin letter, he had been denied his right to the effective assistance of counsel and that his plea was not, therefore, voluntarily made.

---

**2.** Petitioner was never evaluated at Whiting, though he later testified that he did undergo a psychiatric evaluation while incarcerated in state prison.

**3.** The Yamin letter, dated September 19, 1983 on "Yamin and Minnella" stationary, reads:

Dear Peter,
The alternative which you have at your disposal is as follows: to plead guilty to one count on each file. The sentence will run concurrently which would mean that you would serve a minimum of five years.
Simultaneously, the [sic] pleading to these charges you will be sent to the Forencis [sic] Institute in Hartford for 60 days. During the 60 days you will be evaluated by psychiatrists to determine if it is to your best interest to remain there for psychiatric treatment.
In the event that you do not qualify, then upon termination of the 60 days, you will complete your sentence at Somers or at some other facility at the discretion of the Commissioner of correction.
If you do not accept this program, then you must face trial on two files consisting of eight counts which could result in a minimum of 40 years of incarceration. The likelihood of a conviction is substantial considering the information that we have and also from our discussions with your wife.
Therefore, we strongly recommend that you accept the pleading to one charge in each count and accept the program that the Forencis [sic] Institution with the hope that you would serve your sentence there with psychiatric help.
These are the only alternatives available to you. Please be prepared to make a decision at your Court appearance on September 22, 1983.
Very truly yours,
Paul J. Yamin

Paragraph 12 of his February 21, 1984 *pro se* submission alleges that

> Counsel induced the defendant to plead guilty on the written promise that the two sentences would run concurrent, with a minimum of five years and a cap of thirty years, with no recommendation as to sentence by the prosecutor, and the option to argue for a lower sentence. Said plea bargain was not followed.

Ventura attached the Yamin letter to his habeas petition as Appendix 3. On November 15, 1985, Ventura filed an amended petition, prepared with the benefit of counsel, in which he alleged further that

> [p]rior to entering guilty pleas ... the petitioner was informed by counsel that if he pleaded guilty to one count in each file he would receive concurrent sentences and would serve five years.... If the petitioner had known that he would not get a concurrent sentence, would not get a psychiatric evaluation, and would not serve his sentence in a psychiatric facility, then he would not have pleaded guilty.

Judge Kline held a hearing on the habeas petition on June 28, 1985, during which he heard from several witnesses, including Ventura. Ventura testified that his responses to Judge DeMayo at the plea allocution did not contradict his position in his habeas petition. He claimed that his attorney Minnella, Yamin's partner, had advised him that the plea agreement as represented in the Yamin letter was a secret "closed-door agreement" which would be spoiled if mentioned in open court. On Minnella's instruction, petitioner stated, he lied to Judge DeMayo during the plea allocution.

Unable to hear the State's entire case on June 28, 1985, Judge Kline continued the hearing indefinitely. On August 7, 1985, however, without reconvening the hearing, Judge Kline issued a Memorandum of Decision that granted Ventura's petition and remanded the case for trial on the original twenty-one count charge. When apprised that the State had not yet completed its case, however, Judge Kline granted a Motion to Vacate the Judgment, and on September 20, 1985, continued the hearing.

At the reconvened hearing, Minnella testified that he, not Yamin, was primarily responsible for handling the office's criminal cases, including that of Ventura. He stated that he did not see the Yamin letter until after the sentencing and opined that the letter may have been intended to represent the best possible plea bargain, not one actually offered. Contradicting Ventura, Minnella testified that he had never mentioned a "closed-door agreement," nor had he instructed Ventura to lie during the plea allocution. Minnella testified that on October 7, 1985, before the plea was to be entered, the State for the first time informed him of its offer to accept a guilty plea on only two counts and to recommend a maximum sentence of 30 years with Minnella having the right to argue for less. Minnella testified that he then went directly to Ventura with the accurate terms of the State's proposal, suggested to Ventura that it was in his best interest to accept it, and that Ventura did indeed decide to accept it.

On December 16, 1985, Judge Kline issued a second Memorandum of Decision denying Ventura's petition. Judge Kline credited Minnella's testimony which, as the Court said, "shed an entirely new light on the subject." He also grounded his decision on the thoroughness of Judge DeMayo's plea allocution, finding that "[a]s a matter of record, the canvas [sic] actually belies the petitioner's position today." In conclusion, Judge Kline stated that

> The habeas corpus proceeding, as has been stated numerous times before, is civil in nature. This means the petitioner has the burden of proving his matter by the fair preponderance of the evidence. Having heard the full story, the court is not convinced the petitioner has sustained his burden.... Accordingly, the petition is hereby denied.

Ventura's appeal to the Appellate Court of Connecticut attacked the Superior Court's factual findings as unsupported. In affirming Judge Kline, the Appellate Court reviewed in detail his findings of fact, and examined whether the record supported them. *Ventura v. Lopes*, 10 Conn.

App. 546, 524 A.2d 662 (1987). It determined that Judge Kline's findings that Minnella's testimony had cast "an entirely new light," and that the plea allocution weighed heavily against Ventura, were fully supported. *Ventura*, 10 Conn.App. at 555, 524 A.2d at 666. It further found that Judge Kline's statement that "the court is not convinced the petitioner has sustained his burden [of proving his case by a preponderance of the evidence]" necessarily implied a finding as to the effect, or more precisely, the non-effect of the Yamin letter. The Court stated that Judge Kline's words

> can only be read as a factual conclusion by the court that it was not persuaded that petitioner's pleas were induced by Yamin's letter, and that it was not persuaded that the plea proceedings were a sham created by defense counsel.

*Id.* The Appellate Court found Judge Kline's implied findings of fact "amply supported". *Ventura*, 10 Conn.App. at 555–56, 524 A.2d at 666–67. Petitioner's application for certification of an appeal to the Supreme Court for the State of Connecticut was denied. *Ventura v. Lopes*, 204 Conn. 808, 528 A.2d 1155 (1987).

His state remedies exhausted, Ventura turned to the federal courts. On September 30, 1988, he filed a petition for habeas corpus in federal district court, asserting that the misrepresentations in the Yamin letter constituted ineffective assistance of counsel, rendering his plea involuntary. The petition sought a remand for a new sentence in accordance with the terms of the Yamin letter, or, in the alternative, vacatur of the plea and a remand for trial on the original twenty-one counts.

In analyzing the issues, the district court, acting pursuant to 28 U.S.C. § 2254(d), deferred to the Superior Court's express findings of fact, and to all but one of the Appellate Court of Connecticut's determinations as to Judge Kline's implied findings of fact. It refused to accept the Appellate Court of Connecticut's determination that Judge Kline had made an implied finding of fact that the Yamin letter had not induced the plea, and accorded it no deference. As the district court explained:

The Court declines to afford any deference to what the Appellate Court deemed Judge Kline's last presumed factual finding—that he was not persuaded that petitioner's pleas were induced by Yamin's letter. Since Judge Kline concluded that he was not convinced that petitioner had sustained his "burden," without ever stating what that burden was, the Appellate Court could not decipher any factual determination implicit in his decision.

Having concluded that the Yamin letter's effect was not the subject of a state court finding of fact, the district court held its own evidentiary hearing on the question. On December 18, 1990, it heard from Ventura, Minnella, Yamin and other witnesses who had appeared before Judge Kline. In its May 31, 1991 opinion, however, the district court drew inferences that sharply differed from those reached by Judge Kline. First, it concluded that the plea allocution was consistent with, not contradictory to, Ventura's current position. Ventura, the court reasoned, could conceivably have harmonized the Yamin letter with Judge DeMayo's statement that Ventura's "counsel reserves a right to argue for less." Under this view, Ventura's silence in the face of the plea allocution made sense, since "as long as the defendant retained the right to argue for less than 30 years, the 'concurrent' term of the Yamin letter also remained a viable possibility." The district court also refused to accord any weight to the apparent contradiction between Ventura's testimony that on advice of counsel he had "lied" before Judge DeMayo so as not to spoil the "closed-door agreement," and Minnella's denial of such an instruction. Minnella testified in the district court that he told Ventura that all questions to the court should be relayed through him. This, the district court reasoned, might well have been interpreted by Ventura as an instruction to keep his mouth shut, and any apparent inconsistency was therefore "arguably attributable to confusion on petitioner's part." Having accepted Ventura's arguments as to the plea allocution and as to Minnella's testimony, the district court concluded that

there is no escaping the letter itself, the fact that it was mailed to petitioner by counsel he trusted, the fact that it was never discredited, and the fact that it was not flagrantly inconsistent with the plea agreement stated on the record before Judge DeMayo. These facts leave the Court convinced by a preponderance of the evidence that petitioner persisted in relying on the Yamin letter throughout the changes of plea and was not, in fact, aware of the actual sentencing possibilities facing him.

Based upon the finding that at the plea allocution Ventura was not "aware of the actual sentencing possibilities facing him," the district court granted Ventura's habeas corpus petition. The State appeals this decision.

## DISCUSSION

The central issue on appeal is whether the district court erred in failing to defer under 28 U.S.C. § 2254(d) to state court findings of fact as to the Yamin letter's effect on Ventura's decision to plead guilty. We hold that the district court erred, first, in neglecting to defer to the Appellate Court of Connecticut's determination that the Superior Court had made an implied finding of fact on this issue, and, second, in failing to defer to the Superior Court's implied finding itself. We therefore reverse.

I. *The Presumption of Correctness Under 28 U.S.C. § 2254(d).*

Where a person in custody pursuant to a judgment of a state court petitions for a writ of habeas corpus and alleges facts which, if proven, would be sufficient to gain him relief, the district court may, in its discretion, hold an evidentiary hearing on petitioner's claim. *Townsend v. Sain,* 372 U.S. 293, 318, 83 S.Ct. 745, 759, 9 L.Ed.2d 770 (1963). Congress, however, has estab-

lished certain parameters for such hearings. Mindful of the friction that may develop between federal and state courts, and seeking to promote the interests of comity, *see Sumner v. Mata,* 449 U.S. 539, 547, 550, 101 S.Ct. 764, 769, 770, 66 L.Ed.2d 722 (1981), Congress has enacted 28 U.S.C. § 2254(d) which requires that federal courts hearing a habeas claim defer to state court findings of fact.

Under 28 U.S.C. § 2254(d), federal courts conducting a habeas proceeding must give a "presumption of correctness" to "a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction," unless the conditions for one of the seven listed exceptions are met or unless the state court findings are not "fairly supported" by the record as a whole. *See Sumner,* 449 U.S. 539, 550, 101 S.Ct. 764, 771, 66 L.Ed.2d 722 (1981). Where the presumption applies, "the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous." 28 U.S.C. § 2254(d); *see also Rushen v. Spain,* 464 U.S. 114, 120, 104 S.Ct. 453, 456, 78 L.Ed.2d 267 (1983) (per curiam); *Smith v. Phillips,* 455 U.S. 209, 218, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982); *Sumner v. Mata,* 449 U.S. 539, 550, 101 S.Ct. 764, 770, 66 L.Ed.2d 722 (1981); *LaVallee v. Delle Rose,* 410 U.S. 690, 695, 93 S.Ct. 1203, 1205, 35 L.Ed.2d 637 (1973); *Jarrett v. Headley,* 802 F.2d 34, 42 (2d Cir.1986). The presumption, thus, "is not irrebuttable. If a state court determination is fairly supported by the record, and thus presumed correct, petitioner in a federal evidentiary hearing may nonetheless prevail by shouldering the burden of establishing 'by convincing evidence that the factual determination by the State court was erroneous.'" *Lafferty v. Cook,* 949 F.2d 1546, 1549 n. 1 (10th Cir.1991) (quoting 28 U.S.C. § 2254(d)).[4]

4. Certain language in *Demosthenes v. Baal,* 495 U.S. 731, 110 S.Ct. 2223, 2225, 109 L.Ed.2d 762 (1990) and *Marshall v. Lonberger,* 459 U.S. 422, 432, 103 S.Ct. 843, 849, 74 L.Ed.2d 646 (1983), could be read as making the presumption irrebuttable. After carefully reading each case, we do not find this to be their import. In both

*Demosthenes* and *Lonberger,* the district court deferred to a state court finding of fact and denied relief. The court of appeals, failing to accord the proper deference, resolved the factual issue differently and granted the petition. In reversing, the Supreme Court reaffirmed that where the record "fairly supports" the state

Section 2254(d) requires federal courts to accord deference to implied as well as express findings of fact, *Marshall v. Lonberger*, 459 U.S. 422, 433–34, 103 S.Ct. 843, 850–51, 74 L.Ed.2d 646 (1983), and to the findings of state appellate courts as well as state trial courts, *Sumner v. Mata*, 449 U.S. 539, 546–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981); *Saccomanno v. Scully*, 758 F.2d 62, 65 (2nd Cir.1985). While section § 2254(d) does not require deference to state court findings on mixed issues of fact and law such as whether a plea agreement was entered into voluntarily, *Lonberger*, 459 U.S. at 431–32, 103 S.Ct. at 849–50; *Matusiak v. Kelly*, 786 F.2d 536, 543–44 (2nd Cir.), *cert. dismissed* 479 U.S. 805, 107 S.Ct. 248, 93 L.Ed.2d 172 (1986), or whether there has been ineffective assistance of counsel, *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984), the presumption does apply to "matters of 'historical fact' and to factual inferences to be drawn from the historical facts." *Matusiak*, 786 F.2d at 543; *Lonberger*, 459 U.S. at 431–32, 103 S.Ct. at 849–50. It therefore covers a state appellate court's elucidation of the findings of a state trial court, *see Parker v. Dugger*, — U.S. —, 111 S.Ct. 731, 739, 112 L.Ed.2d 812 (1991) ("a determination of what the trial judge found is an issue of historical fact" and is entitled to a presumption of correctness); *Wainwright v. Goode*, 464 U.S. 78, 83–85, 104 S.Ct. 378, 381–83, 78 L.Ed.2d 187 (1983), and likewise covers a state court finding as to the parties' understanding of a plea agreement, *see Hart v. Marion Correctional Inst.*, 927 F.2d 256, 258 (6th Cir.), *cert. denied* — U.S. —, 112 S.Ct. 70, 116 L.Ed.2d 44 (1991) (federal courts must defer to state courts' determination of petitioner's awareness of sentencing possibilities).

II. *Whether There was a Superior Court Finding.*

In the present case, the district court ruled that the Superior Court had not made a finding on the effect of the Yamin letter. Without such a finding, there could be no deference or presumption of correctness and so the district court evaluated the issue under a "mere preponderance of the evidence" standard, not the "convincing evidence" standard required under § 2254(d).

Our first step is to ascertain whether Judge Kline did indeed make a finding on this issue. It is clear to us that he did. In accordance with *Parker* and *Goode, supra,* we give deference to the Appellate Court of Connecticut's determination that the Superior Court made an implied finding as to the effect of the Yamin letter. We must, therefore, presume this determination to be correct unless it lacks "fair support" in the record. *Marshall v. Lonberger*, 459 U.S. 422, 432, 103 S.Ct. 843, 849, 74 L.Ed.2d 646 (1983).

Upon review of the record, we conclude that not only is there "fair support" for the Appellate Court's express finding of Judge Kline's implied finding, but that it is fairly compelled. Ventura's alleged reliance on the letter formed the crux of his habeas petition as amended. For Judge Kline to have denied Ventura's habeas petition, he must have necessarily found that the Yamin letter did not induce Ventura's plea. Judge Kline's statement that the plea allocution "belies the petitioner's position today" further supports this reading, since at the plea allocution Ventura confirmed that the terms stated by Judge DeMayo were the "sole condition" of his plea agreement. Like the Supreme Court in *LaVallee v. Delle Rose*, 410 U.S. 690, 692, 93 S.Ct. 1203, 1204, 35 L.Ed.2d 637 (1973), we are of the view that: "[a]lthough it is true that the state trial court did not specifically articulate its ... findings, it can scarcely be doubted from its written opinion that respondent's factual contentions were resolved against him." Judge Kline's December 16, 1985 Memorandum of Decision

court finding, federal habeas courts must accord a presumption of correctness. Neither case focused on how the presumption, once deemed applicable, would operate. Moreover, neither intimated that the Court's longstanding position in *Rushen, Smith, Sumner,* and *LaVallee, supra,* which holdings are consistent with the express language of 28 U.S.C. § 2254(d) as to the rebuttable by "convincing evidence" standard, is somehow incorrect.

necessarily contained an implied finding of fact that Ventura, in entering his plea, did not rely on the Yamin letter. The district court erred in failing to defer to the Appellate Court of Connecticut's determination that such a finding had been made, and in failing to acknowledge the Superior Court's finding.

### III. *The Deference to be Accorded to the Superior Court's Finding.*

 Having concluded that the Superior Court did make an implied finding of fact as to the effect of the Yamin letter, we turn to the proper degree of deference due this finding under § 2254(d). Since, as we will further explain, we believe that this finding is fairly supported by the record, the district court should have accorded it a "presumption of correctness." The district court therefore erred when it evaluated this issue under a "preponderance of the evidence" standard rather than under a "convincing evidence" standard.

While we would generally direct the district court to reconsider the issue under the "convincing evidence" standard, we are not precluded, in appropriate circumstances, from concluding ourselves that "convincing evidence" is unavailable. In *Jarrett v. Headley,* 802 F.2d 34 (2d Cir.1986), for example, after holding that the district court had erred in not according a presumption of correctness and had failed to apply the "convincing evidence" standard, we determined ourselves that petitioner could not make the necessary showing and remanded with instructions to dismiss the petition. We concluded that certain of petitioner's factual claims, accepted by the district court, could not "reasonably be inferred", *Jarrett,* 802 F.2d at 45, that the record contradicted other claims, *id.* at 43, and that still others were "highly doubtful," *id.* at 46. *See also Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) (reversing, without remand, where Court of Appeals erred in failing to accord a presumption of correctness, and "respondent ha[d] not adduced 'clear and convincing evidence that the factual determination by the state court was erroneous.' "); *Delle Rose v. LaVallee,* 414 U.S. 1014, 1014, 94

S.Ct. 380, 380, 38 L.Ed.2d 251 (1973) (Marshall, J., dissenting from denial of certiorari after Second Circuit, reversed by Supreme Court, remanded to district court with instruction to dismiss petition); *In re Parker,* 423 F.2d 1021, 1027 (8th Cir.), *cert. den.* 398 U.S. 966, 90 S.Ct. 2182, 26 L.Ed.2d 551 (1970).

Here, as in *Jarrett,* we are confident, after two full hearings plowing the same ground, that the record "fairly supports" the state court finding, and that petitioner would not, on remand, be able to overcome it by "convincing evidence". Ventura's affirmative responses to Judge DeMayo's thorough plea allocution, and his silence at the sentencing proceeding at which he received a thirty-year sentence, alone provide more than ample evidence that he fully understood and accepted the true terms of the State's offer. Judge DeMayo's plea allocution specified that "the only agreement that the court has with you is that it will not impose a sentence in excess of the State's recommendation [of two, consecutive fifteen-year terms]". It put Ventura on notice that the deal being offered him was quite different from the one outlined in the Yamin letter. In the face of such an emphatic statement, it was not reasonable to infer that somehow Ventura was still relying on the Yamin letter. This is particularly so in view of petitioner's failure to respond affirmatively to Judge DeMayo's pointed question as to whether "any other promises [have] been made to cause you to enter into these guilty pleas?" We think the district court was clearly erroneous in not according conclusive weight to the Superior Court's reasonable conclusion that the "as a matter of record, the canvas [sic] actually belies the petitioner's position [that he relied on the letter]."

 Petitioner's own testimony also undercuts his claim. The district court relied on petitioner's statement at the December 18, 1990 hearing that he perceived no conflict between the plea allocution and the Yamin letter. But if Ventura had truly believed the plea allocution to be consistent with the Yamin letter, he would have had no reason to lie to Judge DeMayo. Yet

Ventura plainly testified that, in reliance on a "closed-door deal," he did so lie. Moreover, the district court failed to address the several instances in which Ventura indicated that he *did* perceive a conflict between the plea agreement stated by Judge DeMayo and the one in the Yamin letter, but let it pass because the "closed-door deal" could not be brought out in open court. For example, Ventura had the following dialogue with Judge Kline: [5]

> THE COURT: So the judge gave you what the State recommended. Is that correct? The quarrel is that the—that the—is not that the offer that was made in open court and put on the record was violated. Is it?
>
> A: No, it isn't.
>
> THE COURT: But your claim is that there was some secret agreement somewhere between somebody.
>
> A: That's right.

At another point, Ventura explicitly disavowed that he relied on the right to argue for less:

> THE COURT: You knew the State was going to offer thirty years or not more than thirty years, and your attorneys reserved the right to argue for less.
>
> A: I understood that, but that wasn't the basis for my plea.

He did so again on cross-examination when, after laying out the plea agreement as stated by Judge DeMayo, the State asked:

> Q: And that your counsel could argue for less?
>
> A: Okay.
>
> Q: Is that what you understood?
>
> A: Yes, that's what I understood the State's position was.
>
> Q: But you say now that you had a different understanding. You had an additional understanding. Is that correct?
>
> A: No, at the time I understood that it would be—I wouldn't be sentenced to that. That there was a closed door agreement for five and five concurrent.

Thus, Ventura's own testimony stands in sharp contrast to the district court's finding that petitioner relied on the right to argue for less. Rather it compels the conclusion that no such reliance occurred.

Ventura's claim of a secret, closed-door agreement is similarly insupportable. Minnella, in testimony credited both by the Superior Court and the district court, denied any such agreement and that he told Ventura there was one. The district court's attempt to reconcile this contradiction by finding that Ventura simply misinterpreted Minnella's instruction that all questions to the judge be relayed through him, has no record support. Ventura's position was that he had *lied* to Judge DeMayo on Minnella's instructions. Before Judge Kline, the following dialogue occurred:.

> Q: The Court then went on to say, "And that is the sole—that is the sole condition of the plea discussion then. You understand that?", and you answered, "Yes". So were you lying to Judge DeMayo then?
>
> A: On advice of counsel, yes, I was lying then.
>
> Q: On advice of counsel, once again, you lyed [sic].
>
> A: Yes.
>
> Q: You lied to the judge?
>
> A: If you want to call it that.

And again, on redirect by his own counsel:·

> Q: And why is it that you didn't mention the other conditions that you understood when they asked about the sole condition being a recommendation of a cap of thirty years by the State?
>
> A: Because I didn't want to spoil the deal. I was advised not to say anything.
>
> Q: Was it your understanding that this recommendation that was given to you was a closed door agreement?
>
> A: Yes.
>
> Q: Did anyone ever tell you not to allow that agreement to be spoken in open court?

---

**5.** State court transcripts may be admitted as evidence in a federal habeas proceeding, *see Dempsey v. Wainwright,* 471 F.2d 604, 606 (5th Cir.), *cert. denied* 411 U.S. 968, 93 S.Ct. 2158, 36 L.Ed.2d 690 (1973), and were so received by order of the district court. Thus, we may consider them on appeal.

A: Yes.

Ventura's testimony as to express instructions to lie cannot be reasonably dismissed, as the district court did, as a mere problem of memory since Ventura never claimed memory failure and no other basis for that conclusion exists in the record. The district court's harmonization of Minnella's credited testimony with Ventura's was clearly erroneous, as was the district court's failure to defer to the Superior Court's conclusion that Minnella's testimony weighs strongly against Ventura's claim.

We conclude that, without the benefit of the claim that Minnella instructed him to lie and faced with a plea allocution that clearly laid out the true terms of the plea agreement, Ventura would be unable on remand to demonstrate by "convincing evidence" that the Yamin letter affected his plea.

### IV. *Evaluation of Petitioner's Claim.*

■ Having failed in his factual claim as to the effect of the Yamin letter, petitioner cannot succeed in his claim that ineffective assistance of counsel rendered his plea involuntary. Under prevailing law "[t]he standard [for determining the validity of guilty pleas] was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970); *see also Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985). Ineffective assistance of counsel may render a guilty plea involuntary, and hence invalid. *Hill,* 474 U.S. at 56, 106 S.Ct. at 369. To succeed with such a challenge, a defendant must meet the two-part test initially set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) by showing that his " 'counsel's representation fell below an objective standard of reasonableness' ... [and] 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Hill,* 474 U.S. at 57, 106 S.Ct. at 369 (quoting *Strickland v. Washington,* 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052,

2064–65, 2068, 80 L.Ed.2d 674 (1984)). Where defendant's specific claim is that counsel has misled him as to the possible sentence which might result from a plea of guilty, we have further stated that "the issue is 'whether the defendant was aware of actual sentencing possibilities, and, if not, whether accurate information would have made any difference in his decision to enter a plea,' " *Hunter v. Fogg,* 616 F.2d 55, 58 (2nd Cir.1980) (quoting *Caputo v. Henderson,* 541 F.2d 979, 984 (2nd Cir. 1976)); *see also Rouse v. Foster,* 672 F.2d 649, 651 (8th Cir.1982) (applying test set forth in *Hunter*); *cf. Worthen v. Meachum,* 842 F.2d 1179, 1182 (10th Cir.1988) (applying first prong of *Hunter* test).

■ Even if Ventura could show that the Yamin letter constituted representation below a reasonable standard, a question which we need not reach, Judge DeMayo's clear and thorough plea allocution and Minnella's accurate conveyance of the state's terms on the morning of the plea apprised Ventura of the " 'actual sentencing possibilities,' " *Hunter,* 616 F.2d at 58 (quoting *Caputo v. Henderson,* 541 F.2d 979, 984 (2nd Cir.1976)). Having been made so aware prior to entering the plea agreement, Ventura cannot show that "but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. As we have held, Ventura is unable to demonstrate that the Yamin letter affected his decision to enter the plea one way or the other. We therefore reject petitioner's claim that his plea was involuntary through ineffective assistance of counsel.

### CONCLUSION

Accordingly, we reverse the district court and direct it to enter an order dismissing the habeas corpus petition.