UNITED STATES of America

v.

Isaias SOLER

No. CR. 3:00 CR 227(SRU).

United States District Court,
D. Connecticut.

Oct. 30, 2003.

Alex V. Hernandez, Alina Marquez, James K. Filan, Jr., James Joseph Finnerty, III, U.S. Attorney's Office, Bridgeport, CT, Karen L. Peck, Peter D. Markle, U.S. Attorney's Office, New Haven, CT, for Plaintiff United States of America.

David S. Samuels, Robinson & Cole, Hartford, CT, for Defendant Isaias Soler.

## RULING ON DEFENDANT'S MOTION TO VACATE HIS GUILTY PLEA

UNDERHILL, District Judge.

Isaias Soler ("Soler") is named as a defendant in nine counts of the Third Superseding Indictment in this case. On January 9, 2002, after approximately three days of trial, Soler pled guilty to all charges against him. *See* Tr. at 2.[1] Includ-

---

1. All references to transcripts refer to the     transcript of the plea allocution dated January

ed among these counts was a VCAR (Violent Crime in Aid of Racketeering) murder claim (hereinafter also referred to as "Count three"). In the present motion, Soler moves to withdraw his guilty plea, arguing that the plea is invalid because he "involuntarily" entered the plea. More specifically, Soler maintains that he entered his plea involuntarily because both his counsel, Attorney Peter Truebner, and the court failed to sufficiently advise him that the Federal Sentencing Guidelines ("Sentencing Guidelines") mandate an automatic life term of imprisonment for VCAR murder. For the reasons that follow, Soler's motion is denied.

## I. Background

Prior to accepting Soler's guilty plea, the Government, in open court, described the nature of each count against Soler, as well as the penalties that he faced on each charge. Specifically, Assistant United States Attorney Alex Hernandez described the nature of the charge set forth in Count three and stated that Soler faced a life term of imprisonment if he pled guilty to Count three.

> Count three charges the defendant with committing [a] violent crime in aid of racketeering, specifically murder, in violation of Title 18 United States Code, Section 1959 Subsection A 1. Pursuant to 1959, the defendant is facing a mandatory lifetime term of imprisonment at the time of sentencing . . . .

Tr. at 8.

At the conclusion of the Government's summary of the charges and associated penalties, the court inquired into Soler's understanding of the charges filed against him and in particular, it inquired whether Soler was aware that Count three mandated a life term of imprisonment.

THE COURT: Mr. Soler, do you understand the nature of each of the charges against you in these nine counts?

THE DEFENDANT: Yes.

　　.　　　.　　　.　　　.　　　.

THE COURT: And do you understand that with Count Three that there is a mandatory life imprisonment penalty that applies?

THE DEFENDANT: Yes.

*Id.* at 10–11.

Thereafter, the court granted Soler a recess to discuss with Attorney Treubner any potential issues he might have with pleading guilty. *See id.* at 15. At the conclusion of the recess, Attorney Truebner and Soler both represented in open court that Soler, with the understanding that he was facing a life term of imprisonment, wished to continue with the allocution.

THE COURT: Mr. Truebner, have you and Mr. Soler had sufficient time to talk through your issues?

MR. TRUEBNER: We have, Your Honor, and he wants to continue with his plea of guilty. I think everyone in the courtroom can appreciate how difficult it is for a 22 year old man to plead guilty to a charge carrying a mandatory life sentence, particularly when he believes there are some defenses to that charge, and suddenly he just saw the doors closing on him forever and had some second thoughts about his decision, but I think he's had an opportunity to reconsider and is prepared to continue.

THE COURT: All right. Mr. Soler, is that correct?

THE DEFENDANT: Yes.

THE COURT: All right. We were going through the list of rights that you'd be giving up if you plead guilty and I

9, 2002 (Docket # 1125).

want to be sure you didn't have any questions or concerns about anything I've said so far in describing those rights.[2]

THE DEFENDANT: No questions.

THE COURT: All right. You understand everything I've said so far?

THE DEFENDANT: Yes.

*Id.* at 16–17.

Shortly thereafter, the court asked the parties whether the plea agreement accurately reflected that Count three involved a mandatory life term of imprisonment. Counsel and the defendant acknowledged that Count three included such a term of imprisonment.

THE COURT: Mr. Hemandez, let me just inquire whether—and Mr. Truebner as well, whether either of you believe that the third count, penalty for the third court on page two at the top [of the plea agreement letter] should reflect a mandatory lifetime imprisonment? I know we've discussed that in court. Do either of you believe that the plea agreement letter needs to be amended?

MR. HERNANDEZ: I don't think so. I think it says at the top the penalty is lifetime imprisonment. It's not up to lifetime, it's mandatory lifetime imprisonment. We've discussed that with counsel and I believe the defendant and counsel understand that that's what that means.

THE COURT: Mr. Truebner?

MR. TRUEBNER: That is correct, Your Honor, and that was a change from a previous draft agreement which had

the words "up to life," up to life imprisonment, and now it turns out that the statute makes that mandatory so I think that's understood by all the parties.

*Id.* at 21.

The court then inquired whether Soler understood the terms and conditions of the plea letter prior to signing it.

THE COURT: Did you have a chance to read this letter [referring to the plea agreement] before you signed it?

THE DEFENDANT: Yes.

THE COURT: Did you have a chance to talk to Mr. Truebner before you signed it?

THE DEFENDANT: Yes.

THE COURT: Did you understand its terms before you signed it?

THE DEFENDANT: Yes.

*Id.* at 21–22.

Subsequently, upon the court's instructions, the Government stated, in open court, the significant terms of the plea agreement letter. *See id.* at 22–25. Of particular importance to the present motion, the Government stated that the letter reflected that the Sentencing Guidelines would apply in this case, and that Soler acknowledged that he was entering the guilty plea knowingly and voluntarily, and because he was in fact guilty of each of the offenses charged in the indictment. *See id.* at 24. When asked if he had anything to add, Attorney Truebner represented to the court Soler's desire to avoid the mandatory minimum life term of imprisonment by cooperating with the Government.[3]

---

**2.** Prior to this dialogue, Soler assured the court that he was aware of the constitutional rights he was waiving by pleading guilty, that his mind was clear, and that he was satisfied with counsel's representation. *See* Tr. at 2–6.

**3.** Under 18 U.S.C. § 3553(e), a provision of the Sentencing Reform Act, and Federal Sen-

tencing Guideline § 5K1.1 promulgated pursuant thereto, a sentencing court, upon motion of the government, may, in its discretion, impose a sentence below the minimum set forth in the Sentencing Guidelines in consideration of a defendant's substantial assistance in the investigation or prosecution of another person.

MR. TRUEBNER: If your Honor please, the defendant through me has had conversations with the government about possible cooperation and how that cooperation, or at least the opportunity to cooperate may be the basis of getting away from the mandatory life sentence. There have been no specific promises, no guarantees or anything else, but I think just so the record is clear, the defendant is certainly aware of that opportunity and intends to pursue it. Whether or not it amounts to anything or helps him at the end of the day, no one can say and no one's made any promises.

*Id.* at 25–26.

The court then reiterated to the defendant that the Government had made no promises to extend a cooperation agreement and that any future arrangements would be entirely at the Government's discretion.

THE COURT: On that point, Mr. Soler, I want to just make sure you understand a couple of things. One is that there is no agreement that you be permitted to cooperate in any way and even if at some point in the future an agreement does develop that is put down in writing and signed, typically I think, perhaps always, it is the government's decision whether any information you provide to them is sufficient to cause them to want to make a motion that would give you the relief that you're seeking. And they can always decide not to make the motion and your lawyer can't require them to make the motion and I can't require them to make the motion. That's their decision. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And even if they make the motion, there is no guarantee that the motion would be granted. That's my decision, do you understand that?

THE DEFENDANT: Yes.

. . . . .

THE COURT: And if you're unhappy, even if all of this comes to pass and you're unhappy at the end of the day with the sentence that you receive, you're not going to be able to go back and withdraw your guilty plea, and you're not going to have any right to appeal your conviction, do you understand that?

THE DEFENDANT: Yes.

*Id.* at 26–27.

Thereafter, the court described the sentencing process, and in particular, the Sentencing Guidelines and their relationship to the sentencing statutes. At first, Soler admitted that he did not understand generally how the Sentencing Guidelines work. After the court's explanation of the Sentencing Guidelines, however, Soler acknowledged that he understood how the Sentencing Guidelines worked.

THE COURT: I also want to be sure that you understand that in the sentencing process, I'm going to be given information about you, about your crimes, about the facts and circumstances that are relevant to sentencing, and any information that comes to me that I find reliable I can rely upon and I can base my sentencing on that information, even if that information comes from you or your family [or] your friends. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And what that means is based upon that information, you may receive a harsher sentence than you expect and even if you do, again, I want to be sure that you understand that you cannot withdraw your guilty plea and you cannot appeal your conviction, you'll be left only with the right to appeal your sentence. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Sentencing in the federal court is governed in two important ways. One is by what we call the sentencing guidelines, and the other is by federal laws, what we call statutes that set forth certain minimums and maximum penalties. I want to be sure that you understand both that there is the sentencing guidelines and how generally how those guidelines operate, and second, that you understand that there may be statutes, laws that trump that I have to follow instead of the guidelines. Do you understand generally how that works?

THE DEFENDANT: No.

THE COURT: Okay. All right, the sentencing guidelines literally are a book of rules that tell me as a judge primarily how I make decisions about two things. One thing is the seriousness of your offense. And those literally are given a number, a rating about how serious the offense, your offense conduct is. And the other factor is your criminal history, how many times you've been convicted, what you were convicted of, whether you were convicted while you were on probation or parole, any number of factors that, again, give a rating of how serious your past criminal history is. Do you understand?

THE DEFENDANT: Yes

THE COURT: All right, and then literally there is a chart at the back of this book and the chart, you go down to the number of the seriousness of your offense and you go across to the level of

your criminal history and you'll see in the little box the guideline what's called the guideline range of incarceration. That is the period of time that you are likely to be sentenced to. All right? Do you understand? Have you seen that chart?

THE DEFENDANT: Yes.

*Id.* at 32–34.

Following the plea allocution, Soler pled guilty to each of the nine counts in which he was charged, and the court accepted his plea. Eighteen months later, Soler filed the present motion. Soler has yet be to be sentenced.

## II. Standards of Review of a Motion to Withdraw a Guilty Plea

■ Motions to withdraw a guilty plea before sentencing are governed by Federal Rule of Criminal Procedure 11(d)(2)(B).[4] Rule 11(d)(2)(B) states that "[a] defendant may withdraw a plea of guilty or nolo contendere . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting withdrawal." "Although this standard implies that motions to withdraw prior to sentence should be liberally granted, a defendant who seeks to withdraw his plea bears the burden of satisfying the trial judge that there are valid grounds for withdrawal, taking into account any prejudice to the government." *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir.1992) (internal quotations marks and citations omitted) (referring to former Rule 32(d)). "However, the gov-

---

**4.** Before December 1, 2002, Rule 11(d)(2)(B) was found in Rule 32(e). *See United States v. Nostratis*, 321 F.3d 1206, 1208 n. 1 (9th Cir. 2003) ("Despite minor language changes in the rule, the 'fair and just reason' standard remains the same" in the new rule.). In addition, before the 1994 amendments, the text of Rule 11(d)(2)(B) appeared in Rule 32(d). *See*

Fed.R.Crim.P. 11 Advisory Committee Notes (2002 Amendments); Fed.R.Crim.P. 32 Advisory Committee Notes (1994 Amendments). Thus, although Soler made his motion pursuant to Rule 32(d), the court has treated the motion as one made pursuant to Rule 11(d)(2)(B).

ernment need not demonstrate prejudice where the defendant fails to show sufficient grounds to justify withdrawal of the plea." *Id.* (citing *United States v. Torres,* 129 F.3d 710, 715 (2d Cir.1997)).

■ A defendant who raises a "significant question about the voluntariness of the original plea" has a valid ground to vacate the plea. *Torres,* 129 F.3d at 715 (citing *United States v. Maher,* 108 F.3d 1513, 1529 (2d Cir.1997)). A defendant, however, must offer more than "bald statements that simply contradict what he said at his plea allocution" in order to call into doubt the voluntariness of his guilty plea. *See id.* In this case, Soler contends that his plea was involuntary because Attorney Truebner failed to adequately inform him that the Sentencing Guidelines mandate a life term of imprisonment on the VCAR murder claim. In addition, Soler claims that his plea was involuntary because the court, in violation of Federal Rule of Criminal Procedure 11, failed to appropriately inquire into whether Soler understood that the Sentencing Guidelines provide for a mandatory life term of imprisonment on the VCAR murder claim in Count three.

### A. *Ineffective Assistance of Counsel*

The court is permitted to vacate a guilty plea if the defendant entered the plea involuntarily as a result of ineffective assistance of counsel. *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *United States v. Couto,* 311 F.3d 179, 182 (2d Cir.2002). In order to withdraw a guilty plea based on ineffective assistance of counsel, a defendant must demonstrate that his counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Lockhart,* 474 U.S. at 58, 106 S.Ct. 366

(holding that "the two-part *Strickland v. Washington,* [466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),] test applies to challenges to guilty pleas based on ineffective assistance of counsel."); *Ventura v. Meachum,* 957 F.2d 1048, 1058 (2d Cir. 1992) (same). Where, as here, the petitioner's specific claim is that counsel has failed to advise him of the sentence that could result from a plea of guilty, the critical issue in evaluating the ineffective assistance of counsel claim is whether, at the time of his change of plea, "the defendant was aware of the actual sentencing possibilities, and, if not, whether accurate information would have made any difference in his decision to enter a plea." *Ventura,* 957 F.2d at 1058 (internal citations omitted); *see also U.S. ex rel. Hill v. Ternullo,* 510 F.2d 844 (2d Cir.1975) (noting that counsel's failure to advise his client properly on the maximum or minimum term fixed by statute for an offense may vitiate the guilty plea); *cf. United States ex rel. LaFay v. Fritz,* 455 F.2d 297 (2d Cir.1972) (noting that an attorney's reasonably mistaken estimate to his client of the sentencing possibilities does not deprive the defendant's subsequent plea of the requisite intelligent and voluntary quality). Thus, even if counsel provides deficient advice, a defendant who understands the actual sentencing possibilities prior to entering the plea cannot succeed on an ineffective assistance of counsel claim because the defendant cannot prove that "but for counsel's unprofessional errors," he would have elected to proceed with the trial instead of pleading guilty. *Id.; see also Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

### B. *Federal Rule of Criminal Procedure 11*

Among other things, Rule 11 requires the court to ensure that the defendant

understands the maximum and minimum penalties he faces by pleading guilty. *See* Fed.R.Crim.P. 11(b)(1)(H-I). "The Second Circuit has adopted a standard of strict adherence to Rule 11." *United States v. Lora,* 895 F.2d 878, 880 (2d Cir.1990); *United States v. Rossillo,* 853 F.2d 1062 (2d Cir.1988); *United States v. Gonzalez,* 820 F.2d 575 (2d Cir.1987); *United States v. Journet,* 544 F.2d 633 (2d Cir.1976) (rationalizing the court's strict adherence to Rule 11 because a "guilty plea is the equivalent of a conviction and involves the defendant's waiver of precious constitutional rights") (internal citations and quotations omitted). The court is permitted, therefore, to vacate a guilty plea if the defendant entered a plea involuntarily as a result of the sentencing court's failure to comply with Fed.R.Crim.P. 11. *See United States v. Journet,* 544 F.2d 633 (2d Cir.1976) (vacating defendant's guilty plea because the district court failed to inform the defendant that the maximum possible sentence included a possible life-time parole.).

## III. Discussion

■ Soler argues that his plea is invalid because he received ineffective assistance of counsel and because the court violated Rule 11. The critical issue in deciding both of these claims is whether, at the time of the allocution, Soler was aware that he faced a life sentence if he pled guilty to the VCAR murder claim. *See Ventura,* 957 F.2d at 1058.

Throughout the allocution, the court went to great lengths to inquire into the defendant's understanding that he faced a term of life imprisonment by pleading guilty to Count three. Soler repeatedly assured the court that he understood the consequences of pleading guilty, and in particular, that he faced a term of life imprisonment on Count three. A review of the record demonstrates that, at the

time of the plea allocution, Soler was unequivocally aware that the Sentencing Guidelines mandated a life term of imprisonment for Count three. Accordingly, in the absence of any credible evidence to the contrary, the court is permitted to rely upon the defendant's sworn statements, made in open court, that: his plea was knowing and voluntary, he understood that Count three required a mandatory term of life imprisonment, he had discussed the plea with his attorney, he knew that he could not withdraw the plea, he knew that no promises had been made except those contained in the plea agreement, and he was satisfied with the advice of counsel. *See Hernandez,* 242 F.3d at 113; *Torres,* 129 F.3d at 715 ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea."); *see also United States v. DeJesus,* 219 F.3d 117, 121 (2d Cir.2000) (per curiam) (rejecting the defendant's assertion that he did not knowingly waive his right to appeal in his plea agreement because that contention was inconsistent with his statements during the plea colloquy).

Even if Soler could show that counsel's representation fell below a reasonable standard, a question which I need not reach, the claim of ineffective assistance of counsel must fail because Soler was aware that the Sentencing Guidelines mandated a term of life imprisonment for Count three. Thus, Soler cannot show a reasonable probability that, but for the alleged ineffectiveness, he would have decided to continue with the trial. *See Ventura,* 957 F.2d at 1058.

Similarly, Soler's claim that the court violated Fed.R.Crim.P. 11 is also without merit. On numerous occasions, the court inquired into Soler's understanding of the nature and penalties associated with the charged crimes. The court explained the Sentencing Guidelines to Soler and re-

peatedly inquired whether he understood that he faced a term of life imprisonment by pleading guilty to the VCAR murder claim. Soler assured the court that he understood the Sentencing Guidelines and that he was facing a term of life imprisonment. Again, Soler has failed to provide the court with any justification for ignoring the statements he made during the plea allocution that he understood the penalties associated with the VCAR murder claim.

## IV. Conclusion.

The record makes clear that Soler decided to plead guilty to Count three with a clear understanding that the Sentencing Guidelines mandate a life sentence for that count of conviction. Accordingly, Soler's motion to withdraw his guilty plea [doc. # 1236] on the ground that he involuntarily entered the plea is DENIED.

It is so ordered.